# EXHIBIT B

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| **JEFFREY PADOVANO, THOMAS WERNDLE, CHRIS ARBER, MICHAEL TUTTLE and ANDREW MITRANO, on Behalf of themselves and others similarly Situated,** | § § § § § § | |
| **Plaintiffs,** | § | |
| **v.** | § § | **CIVIL ACTION NO. _____** |
| **FEDEX GROUND PACKAGE SYSTEM, INC.,** | § § § § | |
| **Defendant.** | § | |

### DECLARATION OF ARUN J. THOMAS

1. My name is Arun J. Thomas. I am capable of making this declaration. The facts stated in this declaration are within my personal knowledge and are true and correct.

2. I am a Senior Attorney in the Litigation Group of Defendant FedEx Ground Package System, Inc. ("FedEx Ground"). I am licensed to practice law in the State of Pennsylvania (PA Bar ID 78617), the U.S. District Court for the Western District of Pennsylvania, and the U.S. Supreme Court, among others.

3. Utilizing the Public Access to Court Electronic Records (PACER) system, I accessed the docket for *Gennell v FedEx Corporation, FedEx Ground Package System Inc., and FedEx Home Delivery*, Case No. 1:05-cv-00145 (PB), in the United States District Court for the District of New Hampshire ("Gennell Lawsuit"). Attached to this Declaration at Attachment 1 is a true and correct copy of the documents filed at docket entry number 93 of that case – the Joint Motion for Preliminary Approval of Class Action Settlement, For Approval to Distribute Class Notice and to Set Final Fairness Hearing, with attachments.

4. The Settlement Agreement in the Gennell Lawsuit is document 93-2 at Attachment 1. The Claims remaining at the time of settlement are set forth at pages 1-2 of the Settlement Agreement. According to the Settlement Agreement, the Gennell plaintiffs obtained summary judgment for certain deductions pursuant to their claim for unauthorized deductions from compensation. (Settlement Agreement, p. 2).

5. There were about 200 class members in the Gennell Lawsuit. Memorandum of Law in Support of Joint Motion for Preliminary Approval of Class Action Settlement, For Approval to Distribute Class Notice and to Set Final Fairness Hearing, Document 93-1, p. 3 ("Support Memorandum")(Attachment 1 hereto).

6. The settlement amount was $8,700,000 with $5,483,000 allocated as the Total Net Payments to Class Members. Exhibit 3 to Settlement Agreement, Document number 93-6 (Attachment 1 hereto).

7. The class period in the Gennell Lawsuit was from 2002 – 2009.   Support Memorandum, p. 5.

8. The Gennell Lawsuit class members' damages were calculated utilizing deductions figures relative to class members during the class period. *Id.*

9. As reflected on the publicly available websites of the U.S. Securities and Exchange Commission and the State of Delaware, FedEx Ground is incorporated in the State of Delaware.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this the _____4th_____ day of January, 2016.

Arun J. Thomas

# ATTACHMENT 1

## UNITED STATES DISTRICT COURT
### DISTRICT OF NEW HAMPSHIRE

Robert GENNELL, Jr., *et al.*,

        Plaintiffs,               CASE NO. 1:05-CV-00145 (PB)

v.

FEDEX CORPORATION; FEDEX GROUND
PACKAGE SYSTEM, INC.; and FEDEX
HOME DELIVERY (a division thereof),

        Defendants.

_____/

## JOINT MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT, FOR APPROVAL TO DISTRIBUTE CLASS NOTICE AND TO SET FINAL FAIRNESS HEARING

      The Parties respectfully request that this Court (1) grant preliminary approval of the class

action settlement as described in the attached memorandum; (2) approve the notice filed

contemporaneously to enable the parties to send notice of the settlement to all class members;

and (3) schedule a final fairness hearing. This motion is based on the attached memorandum and

exhibits, which includes a fully executed copy of the settlement agreement entered into between

the parties.

Dated: September 4, 2014         Respectfully submitted,

                        LOCKRIDGE GRINDAL NAUEN P.L.L.P.

                        s/Susan E. Ellingstad
                         Susan Ellingstad, Esquire *(pro hac vice)*
                        100 Washington Avenue South, Suite 2200
                        Minneapolis, MN 55401
                        Telephone:    (612) 339-6900
                        Email:       seellingstad@locklaw.com

                        -and-

Jordan M. Lewis, Esquire *(pro hac vice)*
**Kelley ⚖ Uustal, PLC**
700 S. E. 3rd Avenue, Suite 300
Fort Lauderdale, Florida 33316
Telephone: (954) 522-6601
Facsimile:  (954) 522-6608
Email:      jml@kulaw.com

-and-

Edward O'Brien (NH Bar No: 2866)
**O'BRIEN LAW FIRM, PC**
One Sundial Avenue
Fifth Floor
Manchester, New Hampshire 03103
Telephone:   (603) 672-3800
Email:       eobrien@ekoblaw.com

*Attorneys for Plaintiffs*

Dated:  September 4, 2014

s/James C. Rehnquist
James C. Rehnquist
Goodwin Procter LLP
Exchange Place
Boston, MA 02109
Telephone:   (617) 570-1820
Email:       jrehnquist@goodwinprocter.com

*Attorney for Defendant*

Case 1:05-cv-00145-PB   Document 93   Filed 09/04/14   Page 3 of 3

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has been furnished

by CM/ECF Electronic Notification this 4th day of September, 2014 to the following:

James Rehnquist, Esquire
Goodwin Proctor
Exchange Place
53 State Street
Boston, MA  02109

Lucy Karl, Esquire
Shaheen & Gordon, P.A.
107 Storrs Street
Concord, NH  03302

s/Susan E. Ellingstad
Susan E. Ellingstad

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW HAMPSHIRE

Robert GENNELL, Jr., *et al.*,

        Plaintiffs,                CASE NO. 1:05-CV-00145 (PB)

v.

FEDEX CORPORATION; FEDEX GROUND
PACKAGE SYSTEM, INC.; and FEDEX
HOME DELIVERY (a division thereof),

        Defendants.

_____/

## MEMORANDUM OF LAW IN SUPPORT
## OF JOINT MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION
## SETTLEMENT, FOR APPROVAL TO DISTRIBUTE CLASS NOTICE AND
## TO SET FINAL FAIRNESS HEARING

### I.    INTRODUCTION

With this joint motion, the named Plaintiffs and certified class representatives seek to

provide to this Court a preliminary review of a proposed settlement of this long-standing case,

which spans nine years, two courts (this Court and the Northern District of Indiana) and involves

a number of significant summary judgment and class certification decisions. In addition,

Plaintiffs seek authorization from this Court to send a notice of class settlement to the class (the

proposed notice is attached as Exhibit A to the Proposed Order).

Based on Plaintiffs' calculations, the proposed settlement represents 116 cents on the

dollar for the claim that they won, improper deductions under N.H. Rev. Stat. § 275:48, and thus

also partly funds Plaintiffs' attorneys' fees and costs. The proposed settlement meets all the

requirements necessary for preliminary approval.

## II.     LEGAL STANDARD

Federal Rule of Civil Procedure 23(e)(i)(C) provides: "The court may approve a settlement, voluntary dismissal or compromise that would bind class members only after a hearing and on finding that the settlement, voluntary dismissal or compromise is fair, reasonable and adequate." The Manual for Complex Litigation, Fourth, § 21.632 (2004), sets forth the procedures for preliminary approval of settlements: "The judge must make a preliminary determination on the fairness, reasonableness and adequacy of the settlement terms and must direct the preparation of notice of the certification, proposed settlement, and date of the final fairness hearing."

At the preliminary approval stage, the Court need not make a final determination regarding the fairness, reasonableness and adequateness of a proposed settlement; rather, the Court need only determine whether it falls within the range of possible approval.[1] Thus,

> [w]hen approving a settlement:[T]he judge is required to scrutinize
> the proposed settlement to ensure that it is fair to the persons
> whose interests the court is to protect. Those affected may be
> entitled to notice and an opportunity to be heard. This usually
> involves a two-stage procedure. First, the judge reviews the
> proposal preliminarily to determine whether it is sufficient to
> warrant public notice and a hearing. If so, the final decision on
> approval is made after the hearing.[2]

This settlement as described in this motion satisfies the preliminary approval standard.

## III.     THE LITIGATION

### A.     THE ALLEGATIONS

This lawsuit arises out of events that are traceable back more than a decade ago, when a group of California FedEx drivers sued under California law seeking to recover improper

---

[1] *Scott v. First American Title Ins. Co.*, 2008 WL 4820498, *3 (D.N.H. 2008).

[2] *Hochstadt v. Boston Scientific Corp.*, 708 F. Supp.2d 95, 106 (D. Mass. 2010)(citation omitted).

deductions and certain expenses. This case commenced in this Court in April 2005. Plaintiffs asserted that Defendant has misclassified them as independent contractors. In August 2005, this case, along with more than 40 similar state-law lawsuits filed around the country, was transferred to the Northern District of Indiana as part of a consolidated MDL proceeding.

During these MDL proceedings, the parties engaged in extensive pretrial litigation, which included research of the legal claims; extensive document discovery; depositions; motion practice; expert work and briefing. More than 3.5 million pages of documents were gathered, reviewed, coded, stored and prepared for use in all of the consolidated cases. Plaintiffs took 105 corporate depositions. And Defendant deposed at least 200 of the named Plaintiffs around the country. All expert discovery, with the exception of that related to damages and Defendant's preemption theory, was completed in the MDL.

The New Hampshire Plaintiffs prevailed in two significant motions in the MDL. First, Plaintiffs won their motion for class certification. The MDL Court certified the following class:

> All persons who: 1) entered into or will enter into a [FedEx] Ground or [FedEx] Home Delivery form Operating Agreement (now known as form OP-149 and form OP-139 RES); 2) drove or will drive a vehicle on a full-time basis (meaning exclusive of time off for commonly excused employment absences) since April 27, 2002, to provide package pick-up and delivery services pursuant to the Operating Agreement; and 3) were dispatched out of a terminal in the state of New Hampshire.[3]

There are about 200 class members within this certified class.

Second, Plaintiffs succeeded in a motion for partial summary judgment. The MDL court found that Plaintiffs were employees, not independent contractors, under the New Hampshire

---

[3] *In re FedEx Ground Package Sys., Inc. Employment Practices Litig.*, 273 F.R.D. 424, 470 (N.D. Ind. 2008).

Case 1:05-cv-00145-PB   Document 93-1   Filed 09/04/14   Page 4 of 10

wage protection statutes.[4]  The MDL court granted summary judgment in favor of Defendant,
however, on Plaintiffs' common law claims.[5]

The case was remanded back to this Court in May 2011.  The MDL record was
transferred in November 2011.  Since that time, the parties have continued to engage in
substantial litigation, which included additional written discovery and depositions of a number of
"test Plaintiffs" the parties jointly selected as a means of sampling the entire class.  In addition,
the parties produced expert damage reports; and each party deposed the other's damages expert.
In addition, Defendant produced two experts related to its preemption argument.  This additional
year of discovery culminated in two distinct rounds of cross-motions for summary judgment.

Plaintiffs prevailed on their improper deduction claim in the first round of summary
judgment motions.  The Court found that Defendant was liable to Plaintiffs under N.H. Rev. Stat.
§ 275:48.  In addition, the Court rejected Defendant's argument that the Federal Aviation
Administration Authorization Act of 1994 preempted all of Plaintiffs' claims.  The Court
concluded that it could not decide the parties' cross-motions concerning Plaintiffs' second claim,
for expense reimbursement under N.H. Rev. Stat. § 275:57, without further briefing.[6]

On the second round of briefing, the Court granted summary judgment for Defendant on
Plaintiffs' remaining statutory claim.  This decision mooted Defendant's motion to decertify the
expense reimbursement claim.[7]

After this final round of motion practice, the parties engaged in informal discovery
concerning the breadth and substance of several databases that captured (among other things) all

---

[4] *In re FedEx Ground Package Sys., Inc. Employment Practices Litig.*, 758 F. Supp.2d 638, 698-
99 (N.D. Ind. 2010).

[5] *Id.*

[6] *Gennell v. FedEx Package Ground Sys.*, 2013 WL 4854362 (D.N.H. Sept. 10, 2013).

[7] *Gennell v. FedEx Package Ground Sys.*, 2014 WL 1091148 (D.N.H. March 19, 2014).

of the deductions taken during most of the class period.  The analysis of the database was

extensive, with detailed exchanges between the parties intended to ascertain the nature of the

coded entries used in the data.  This analysis and exchanges spanned several months.

This process culminated in a full-day mediation on May 29 before attorney William

Glahn in Manchester.  The parties (attorneys and clients were present at the mediation) did not

reach agreement that day but continued their discussions.  These discussions resulted in a signed

settlement term sheet.  The settlement terms, more fully described in the settlement agreement

(filed along with this motion as Exhibit A), are now before this Court via this motion for

preliminary approval.

B.     **THE PROPOSED SETTLEMENT**

According to Defendant's records, there are about 200 class members in the certified

class.  Class members' damages are calculated based on the following formula:

- Between 2005-09, class members' damages are calculated, to the penny, based on Defendant's databases that captured all of the deductions taken during that period.

- The class period, however, extends to 2002.  For the period between 2002-05, Plaintiffs have (a) first calculated the average "damages" per week as derived through the database and then (b) multiplied the average weekly damages against the number of weeks each class members worked, as also recorded by Defendant.

- The two numbers – actual damages from 2005-09 and prorated damages from 2002-05 – are then added together.  From this amount Plaintiffs will seek to deduct costs (including proposed class representative awards) and attorneys' fees. Counsel will seek, and Defendant does not oppose, an incentive award of up to $25,000 for each of the class representatives in this case, and up to one-third of the recovery as their fee.  The class representative award is justified due to the unusual investment of time and energy committed by the named Plaintiffs, which included two rounds of depositions and two rounds of written discovery, multiple client meetings, and many dozens of hours of client and class outreach and contact.  This incentive award payments are included in the class notice, which is also filed with this Court for approval.

- A spreadsheet that details the gross settlement amount, the attorneys' fees sought, and the individual settlement allocations is attached as an exhibit to the settlement

agreement, which is filed contemporaneously with this motion.

- In return for the above consideration to be paid by Defendant, the settlement, if approved, will result in a release by Plaintiffs and class members of all claims under New Hampshire's wage statutes or any other claim implicating their employment status with Defendant. Upon entry of the final approval order, this action shall be dismissed with prejudice.

### C.   NOTICE

Under Fed. R. Civ. P. 23(e)(1), "[t]he court must direct notice in a reasonable manner to all class members who would be bound by a [proposed settlement]." The proposed forms of notice are reasonable and designed to advise members of the class of their rights. The proposed notice, to be mailed to class members, is attached as Exhibit A to the Proposed Preliminary Approval Order, which is attached as Exhibit 2 of the Settlement Agreement. Plaintiffs request that the date the Court sets for the Final Approval Hearing is no sooner than 60 days after the Court's grant of Preliminary Approval, or as soon thereafter as the Court's schedule permits.

### D.   OPTING OUT

Any Settlement Class member wishing to opt-out of the Settlement Class must individually sign and timely submit written notice of such intent to the Settlement Administrator. The written notice must clearly manifest an intent to be excluded from the settlement. To be effective, written notice must be postmarked within 30 days of the transmittal of the Notice for the Final Approval Hearing.

### E.   OBJECTIONS

Any class member wishing to object to any aspect of the settlement, including the attorneys' fee application, shall file with the Court or Plaintiffs' lead counsel a timely written notice of his or her objection, which shall set forth the basis for the objection. To be timely, written notice of an objection in appropriate form must be postmarked at least 14 days before the

date set in the Notice for the Final Approval Hearing, and served either upon Lead Counsel

Jordan Lewis, Kelley Uustal, 700 SE 3rd Avenue, Fort Lauderdale, FL 33308 or the Court.

F.    **NOTIFICATIONS UNDER THE CLASS ACTION FAIRNESS ACT**

Defendants shall comply with the obligation to give notice under Class Action Fairness

Act, 28 U.S.C. § 1715, in connection with the proposed settlement.  No later than 10 calendar

days before the Final Approval Hearing, defendants' counsel will file with the Court one or more

declarations stating that defendants have complied with its notice obligations under 28 U.S.C.

§ 1715.

## IV.    ANALYSIS

In reviewing the Settlement Agreement for preliminary approval, this Court must

determine whether it is within the range of fair, reasonable and adequate.[8]  A district court has

broad discretion with respect to the approval of class action settlements, and the court's decision

is reviewed for an abuse of discretion.[9]  The court, however, "should always review the proposed

settlement in light of the strong judicial policy that favors settlements."[10]  Courts have adopted a

relaxed standard for preliminary approval of class action settlements:

> If the preliminary evaluation of the proposed settlement does not
> disclose grounds to doubt its fairness or other obvious deficiencies,
> such as unduly preferential treatment of class representatives or of
> segments of the class, or excessive compensation for attorneys, and
> appears to fall within the range of possible approval, the court
> should direct that notice under [Federal] Rule 23(e) be given to the
> class members of a formal fairness hearing, at which arguments
> and evidence may be presented in support of and in opposition to
> the settlement.[11]

---

[8] *Manual for Complex Litig.* § 30.41.

[9] *See e.g.*, *In re Sunbeam Securities Litigation*, 176 F. Supp.2d 1323, 1329 (S.D. Fla. 2001).

[10] *Id.* (internal citation omitted).

[11] *Manual for Complex Litig.* § 30.41.

In *In re Tyco International, Ltd. Sec. Litig.*,[12] this Court, in granting preliminary approval of a settlement, based its approval on the following factors:

1) The settlement resulted from extensive arm's length negotiations under the auspices of experienced mediators. *This factor weighs in favor of preliminary approval here, as well. The proposed settlement is the result of at many hours of negotiation, that began under the auspices of mediator Glahn and continued between the parties for weeks after the mediation formally concluded.*

2) The settlement occurred after extensive discovery. This, too weighs in favor of granting preliminary approval here. In addition, the parties engaged in extensive cross summary judgment motions, which had the effect of establishing "market value," which – Plaintiffs believe – the proposed settlement reflects.

Accordingly, where, as here, the proposed settlement is the result of serious, arms'-length negotiations between the parties, has no obvious deficiencies, falls within the range of possible approval and does not grant preferential treatment to Plaintiffs or other segments of the class, courts generally grant preliminary approval and direct that notice of a formal final approval hearing be given to class members.[13]

This case easily satisfies the standards required for preliminary approval. Class members will recover at least 100% of their actual losses in this case, without having to complete a claim form (which usually dramatically reduces the rate of recovery). The Court should grant the motion, approve the notice and schedule a fairness hearing.

---

[12] 2007 WL 7752070 (D.N.H. July 13, 2007).

[13] *See e.g.*, *Williams Foods, Inc. v. Eastman Chemical Co.*, 2001 WL 1298887, * 3-5 (D. Kan. Aug. 8, 2001); *see also In re Minolta Camera Prods. Antitrust Litig.*, 668 F. Supp. 456, 459-60 (D. Md. 1987).

Dated: September 4, 2014

Respectfully submitted,

LOCKRIDGE GRINDAL NAUEN P.L.L.P.

s/Susan E. Ellingstad
  Susan Ellingstad, Esquire *(pro hac vice)*
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Telephone:    (612) 339-6900
Email:        seellingstad@locklaw.com

-and-

Jordan M. Lewis, Esquire *(pro hac vice)*
**Kelley ⚖ Uustal, PLC**
700 S. E. 3rd Avenue, Suite 300
Fort Lauderdale, Florida 33316
Telephone: (954) 522-6601
Facsimile:  (954) 522-6608
Email:       jml@kulaw.com

-and-

Edward O'Brien (NH Bar No: 2866)
**O'BRIEN LAW FIRM, PC**
One Sundial Avenue
Fifth Floor
Manchester, New Hampshire 03103
Telephone:    (603) 672-3800
Email:        eobrien@ekoblaw.com

*Attorneys for Plaintiffs*

Dated:  September 4, 2014

s/James C. Rehnquist
James C. Rehnquist
Goodwin Procter LLP
Exchange Place
Boston, MA 02109
Telephone:    (617) 570-1820
Email:        jrehnquist@goodwinprocter.com

*Attorney for Defendant*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has been furnished

by CM/ECF Electronic Notification this 4th day of September, 2014 to the following:

James Rehnquist, Esquire
Goodwin Proctor
Exchange Place
53 State Street
Boston, MA  02109

Lucy Karl, Esquire
Shaheen & Gordon, P.A.
107 Storrs Street
Concord, NH  03302

s/Susan E. Ellingstad
Susan E. Ellingstad

# EXHIBIT A

Case 1:05-cv-00145-PB   Document 93-2   Filed 09/04/14   Page 2 of 26

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| Robert GENNELL, Jr., *et al.*; ) <br><br> Plaintiffs; ) <br><br> v. ) <br><br> FEDEX GROUND PACKAGE SYSTEM, ) <br> INC. and FEDEX HOME DELIVERY ) <br> (a division thereof) ) | Case No. 1:05-CV-00145 (PB) |

### SETTLEMENT AGREEMENT AND RELEASE OF CLAIMS

This Settlement Agreement and Release of Claims ("Agreement") is made and entered on the last date entered below by and between Plaintiffs Robert Gennell, Jr., Kimball P. Rice, Donald Swazey, Gary Terrio, Lance Tucker, and Shane Tucker ("Plaintiffs"), individually and on behalf of all others similarly situated, and the Class Members, as defined below; and Defendant FedEx Ground Package System, Inc., including its service offering FedEx Home Delivery and its subsidiaries, successors, predecessors, assigns, affiliates, parent companies, shareholders, officers, directors, agents, insurers, attorneys, and employees ("FXG") (collectively, the "Parties"), to settle, fully and finally, all of the claims that have or could have been raised in this class action lawsuit on behalf of the Class Members against FXG, as described below, subject to the Court's approval.

### RECITALS

WHEREAS, on April 27, 2005, Plaintiffs filed a complaint in the United States District Court for the District of New Hampshire, currently under the caption of *Robert Gennell, Jr., et al. v. FedEx Ground Package System, Inc.*, Case No. 05-00145-PB ("Lawsuit");

WHEREAS, on May 12, 2006, Plaintiffs amended their complaint to add class allegations, thereby asserting their claims individually and on behalf of all others similarly situated;

WHEREAS, the Lawsuit was certified for class treatment during coordinated pretrial multi-district litigation proceedings in the Northern District of Indiana (Case No. 3:05-MD-727 RM; MDL-1700) (the "MDL");

WHEREAS, the Lawsuit alleged that FXG misclassified Plaintiffs and Class Members as independent contractors and sought recovery for eight causes of action asserted in the Third Amended Complaint filed on December 1, 2006: Count I - Failure to Pay Overtime and to Provide Meal Breaks; Count II - Conversion—Unauthorized Deductions from Compensation; Count III - Fraud; Count IV - Unfair Business Practices in Violation of N.H. Rev. Stat. 358-A, et

seq.; Count V - Rescission of Contract; Count VI - Accounting; Count VII - Declaratory Judgment; and Count VIII - Failure to Reimburse Employee Expenses Under N.H. Rev. Stat. 275:57;

WHEREAS, Counts I and III through VII were dismissed by order of the MDL court on December 13, 2010, and/or were later voluntarily dismissed by Plaintiffs after remand to the District of New Hampshire;

WHEREAS, Plaintiffs continued to prosecute their claims on behalf of themselves and Class Members under Count II for allegedly unauthorized deductions from compensation and Count VIII for failure to reimburse certain expenses;

WHEREAS, on October 21, 2013, the Court granted summary judgment in favor of Plaintiffs for purposes of liability for certain deductions under Count II, and on March 19, 2014, the Court dismissed Count VIII on FXG's motion for summary judgment;

WHEREAS, FXG denies all of Plaintiffs' allegations in the Lawsuit, denies that it has committed any violation of law, misconduct, wrongdoing, or any other actionable conduct, and further denies that it misclassified Plaintiffs or the Class Members;

WHEREAS, after fully considering the risks and costs of continued litigation, the Parties have engaged in settlement discussions, including mediation with Wilbur A. Glahn, III, that enabled the Parties to reach a settlement that will fully and finally resolve the Lawsuit; and

WHEREAS, it is the desire of the Parties to fully, finally and forever settle, compromise, and discharge all disputes and claims that have been alleged in the Lawsuit or that could have been raised in this Lawsuit, and all costs and attorneys' fees incurred or which will be incurred as a result of the Lawsuit,

NOW THEREFORE, in consideration of the mutual covenants, promises and warranties set forth herein, the Parties agree, subject to the Court's approval, as follows:

The above Recitals are incorporated herein by reference.

I.    **DEFINITIONS**

As used in this Agreement, the following definitions shall apply:

A.    "Administrative Expenses" means reasonable fees and expenses incurred by the Settlement Administrator (as these terms are defined below) for (1) preparation and mailing of the Notices set forth below; (2) establishment and maintenance of the QSF defined below; (3) preparing and filing federal income tax returns for the QSF, as well as any other tax filings the QSF must make under federal, state, or local law; (4) paying and depositing the federal taxes owed by the QSF under Treasury Regulation § 1.468B-2, as well as any state or local taxes owed by the QSF; (5) preparing, filing, and issuing all necessary tax reporting forms for the QSF, including IRS Forms 1099 regarding the distribution of payments to Plaintiffs, Eligible Class Members, and Class Counsel; (6) distribution of settlement payments to Plaintiffs, Eligible Class Members, and Class Counsel; (7) generation of reports or other documents required by the

Court; (8) communications with counsel for FXG, Class Counsel or Class Members; (9) address tracking and re-mailing of Notices; and (10) any other tasks jointly agreed to by counsel for FXG and Class Counsel.

B.    "Class Members" means all persons who: 1) entered into a FedEx Ground or FedEx Home Delivery form Operating Agreement (known as form OP-149 and form OP-139 RES); 2) drove a vehicle on a full-time basis (meaning exclusive of time off for commonly excused employment absences) between April 27, 2002 and May 31, 2009, to provide package pick-up and delivery services pursuant to the Operating Agreement; and 3) were dispatched out of a terminal in the state of New Hampshire.

C.    "Class Counsel" means Jordan M. Lewis of Kelley Uustal, PLC, Susan Ellingstad of Lockridge Grindel Nauen, PLLP, and Edward O'Brien of O'Brien Law Firm, PC, individually and on behalf of their respective law firms.

D.    "Effective Date" means the first date that is three business days after all the following have occurred: (i) the Court has entered an order granting final approval of the settlement of the Lawsuit in accordance with the terms of this Agreement; (ii) the time for any challenge to the settlement memorialized in this Agreement, both in the Court and on appeal, has elapsed; and (iii) the settlement memorialized in this Agreement has become final, either because no timely challenge was made to it or because any timely challenge has been finally adjudicated and rejected.

E.    "Eligible Class Member" means each Class Member who is entitled to receive compensation under this Agreement, who has not and does not opt-out, and who provides an executed IRS W-9 form as required in Section V.I.2 below.

F.    "FXG" means FedEx Ground Package System, Inc., including its service offering FedEx Home Delivery and its subsidiaries, successors, predecessors, assigns, affiliates, parent companies, shareholders, officers, directors, agents, insurers, attorneys, and employees.

G.    "Lawsuit" means the civil action pending before Judge Paul Barbadoro in the U.S. District Court for the District of New Hampshire that is captioned *Robert Gennell, Jr., et al. v. FedEx Ground Package System, Inc.*, Case No. 05-00145-PB.

H.    "Notice" means the proposed written notice of class action settlement attached as Exhibit A to the [Proposed] Order Preliminarily Approving Settlement and Directing Class Notice and Setting Final Fairness Hearing, which is attached hereto as Exhibit 2.

I.    "Plaintiffs" means Robert Gennell, Jr., Kimball P. Rice, Donald Swazey, Gary Terrio, Lance Tucker, and Shane Tucker, the named Plaintiffs in this Lawsuit as reflected in the Third Amended Complaint filed on December 1, 2006.

J.    "Plaintiffs' Released Claims" means any and all claims, actions, causes of action, administrative claims, demands, charges, debts, damages, penalties, interest, costs, attorneys' fees, obligations, judgments, expenses, or liabilities, in law or in equity, whether now known or unknown, contingent or absolute, that a Plaintiff (as defined in Paragraph I above), on behalf of himself and on behalf of any of his related or associated business entities (including any entity

for or through which Plaintiffs has provided pickup and delivery services to FXG), had, has or could have had against the Releasees by reason of any act, omission, harm, matter, cause, or event whatsoever, whether sounding in tort, contract, federal, state and/or local law, statute, ordinance, regulation, common law, or other source of law or contract, arising at any time up to and including the Effective Date of this Agreement, for any type of relief, including without limitation wages, pay, unpaid/unreimbursed costs, deductions, penalties, general damages, compensatory damages, liquidated damages, punitive damages, interest, attorneys' fees, litigation and other costs, expenses, restitution, and equitable and declaratory relief. The Plaintiffs' Released Claims include, but are not limited to, the Released Claims (as defined in Paragraph L below), and claims under state or federal discrimination statutes, including, without limitation, the New Hampshire Law Against Discrimination, RSA 354-A; the New Hampshire Whistleblowers' Protection Act, RSA 275-E; the New Hampshire Constitution; the United States Constitution; the Age Discrimination in Employment Act ("ADEA") and the Older Workers Benefit Protection Act; the Uniformed Services Employment and Reemployment Rights Act; Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000, et seq.; the Family and Medical Leave Act, to the extent not prohibited by law; the Americans with Disabilities Act, 42 U.S.C. § 12101, et seq.; the Civil Rights Act of 1866, 42 U.S.C. sec. 1981, as amended, and the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, et seq.; and all of their implementing regulations and interpretive guidelines.

K.     "Qualified Settlement Fund" or "QSF" means the fund that will be established and maintained to resolve the claims at issue, as described in Section II below, and which is intended to be a qualified settlement fund within the meaning of Internal Revenue Code § 468B and Treasury Regulation § 1.468B-1.   The QSF will be controlled by the Settlement Administrator subject to the terms of this Agreement and the Court's Order(s).

L.     "Released Claims" means any and all claims, actions, causes of action, administrative claims, demands, charges, debts, damages, penalties, interest, costs, attorneys' fees, obligations, judgments, expenses, or liabilities, in law or in equity, whether now known or unknown, contingent or absolute, that a Plaintiff or Class Member, on behalf of himself and on behalf of any of his related or associated business entities (including any entity for or through which Plaintiff has provided pickup and delivery services to FXG), had, has or could have had against the Releasees by reason of any act, omission, harm, matter, cause, or event whatsoever, arising at any time up to and including the Effective Date of this Agreement, relating to: the alleged non-payment of wages, expenses incurred, deductions taken, benefits given or not given; or arising under or associated with the Fair Labor Standards Act ("FLSA"), the New Hampshire Protective Legislation Law, RSA 275; the New Hampshire Minimum Wage Law, RSA 279; any claims made to or through the New Hampshire Department of Labor (DOL); and any act, omission, damage, matter, cause, or event whatsoever arising out of the initiation, defense, or settlement of the Lawsuit, claims or defenses asserted or which could have been asserted in the Lawsuit, except for the enforcement of this Agreement. However, any Class Member who does not become an Eligible Class Member will not be deemed to have waived claims under the FLSA.

M.     "Releasees" means the Company, including FedEx Ground Package System, Inc. and FedEx Home Delivery, together with their respective subsidiaries, parent companies,

predecessors and successors in interest, parents, subsidiaries, affiliates, and assigns, and each of its and their respective past, present, and future officers, directors, shareholders, insurers, agents, representatives, servants, employees, attorneys, and insurers.

N.     "Settlement Administrator" means Rust Consulting, Inc., or a similarly qualified firm selected by FXG and approved by the Court to administer the settlement and QSF as set forth in this Agreement.

O.     "Settlement Agreement" or "Agreement" means this Agreement memorializing the terms of the settlement between the Parties, and the exhibits attached hereto.

P.     "Settlement Payment" means the amount defined in Section II below that FXG will transfer to the QSF to resolve the claims at issue.

## II.     PAYMENT TO QUALIFIED SETTLEMENT FUND AND PROCEDURES TO DETERMINE PAYMENTS TO ELIGIBLE CLASS MEMBERS

A.     No later than five business days after the Effective Date, and in accordance with the other terms of this Agreement and its exhibits, FXG shall transfer the Settlement Payment, as described in this section, to the QSF to resolve the contested claims of Eligible Class Members. The Parties intend the QSF to be a "qualified settlement fund" within the meaning of Internal Revenue Code § 468B and Treasury Regulation § 1.468B-1. Accordingly, FXG shall retain no rights or reversionary interests in the Settlement Payment once transferred to the QSF. Furthermore, FXG's obligation to make the Settlement Payment is contingent on (i) the Court's entry of the Preliminary Order appointing the Settlement Administrator and approving the Settlement Administrator to establish and maintain the QSF; (ii) the Court's entry of the Final Approval Order releasing all of the Released Claims and Plaintiffs' Released Claims; and (iii) dismissal of the Lawsuit with prejudice. Under no circumstances shall FXG be required to pay more under this Settlement than the amount of the Settlement Payment, except for the Administrative Expenses described more fully in Sections I.A of this Agreement. The QSF is a common fund that includes Class Counsel's fees and costs and the Incentive and Participation Award payments as described more fully in Section III of this Agreement.

B.     Class Members shall be identified and payments to Eligible Class Members calculated as follows:

1.     The Parties agree to amend the class list to reflect appropriate additions and subtractions identified during the Parties' communications during settlement negotiations. The Parties' agreed class list is reflected in Exhibit 1 to this Settlement Agreement. Exhibit 1 shall be further amended, if necessary, to remove the names of Class Members who opt out of the settlement in accordance with Section V.E. below and the total settlement amount shall be reduced accordingly.

2.     For all purposes in this Agreement, the Parties agree that FXG's data supplied to Class Counsel is to be used, where possible, for determining the number of weeks that each Plaintiff and Class Member worked during the Class Period and for determining the deductions from compensation taken during the Class Period.

3.    Class Counsel has calculated the payments attributable to each Plaintiff and Class Member for the Class Period, using a formula based primarily on the actual amount of deductions from each Plaintiff's and Class Member's compensation. For the period when deductions data is available during 2005-2009, such calculations are based on actual data from FXG's databases. For earlier periods back to April 27, 2002, Class Counsel first calculated the average damages per week from the available data and multiplied the average weekly damages by the number of weeks each Plaintiff and Class Member worked during 2002-2005. The total amount of deductions for a Plaintiff or Class Member determines that person's pro rata share of the Settlement Payment.

4.    To determine each Plaintiff and Class Member's net payment amount, Class Counsel will deduct from the Settlement Payment the amount of costs and attorneys' fees which Plaintiffs will request, on behalf of themselves and Class Members, and the Incentive and Participation Awards as set forth in Section III below. The remaining pro rata amount for each Plaintiff and Class Member represents the net payment for each Eligible Class Member under this Settlement Agreement.

5.    A worksheet describing how the individual settlements are calculated is attached as Exhibit 3 to this Settlement Agreement. This exhibit will accompany the notice and will be tailored to describe the addressee's individual recovery.

## III.    CLASS COUNSEL'S ATTORNEYS' FEES AND COSTS, AND INCENTIVE AWARDS TO PLAINTIFFS

A.    FXG and Class Counsel stipulate to Class Counsel's request for attorneys' fees and any and all other costs up to the total amount of two million nine hundred thousand Dollars in fees ($2.9 million) and $167,000 in costs ("Attorneys' Fees and Costs"), subject to Court approval, which amounts will be included in the total Settlement Payment set forth in Section II above. Any amounts of the requested Attorneys' Fees and Costs not approved by the Court will be redistributed on a pro rata basis to Eligible Class Members who participate in the settlement.

B.    FXG and Class Counsel stipulate to Class Counsel's request for Incentive and Participation Awards to the individuals, and in the amounts, listed in Section III.C. below, subject to Court approval. If any individual(s) for whom such an award is approved opt out of the case, that individual's incentive award, in full, shall be redistributed to Eligible Class Members participating in the Settlement on a pro rata basis. Similarly, if the Court approves lesser amounts than requested and these individuals do not opt-out, such unapproved incentive payments shall also be redistributed to Eligible Class Members participating in the Settlement on a pro rata basis. The Incentive and Participation Award amounts will be included in the total Settlement Payment set forth in Section II above.

C.    The Incentive and Participation Awards, subject to Court approval, are to be distributed as follows: $25,000 to each of the six Plaintiffs identified in Section I.I. above.

D.    The Parties understand and agree that any fee payments made under this Section III of the Agreement will be the full, final, and complete payment of all attorneys' fees and costs arising from or relating to the Plaintiffs and/or Class Members as to any claims or potential

claims they have against FXG or the Released Parties, as defined in the Release, as of the date of the Release. Upon transferring the Settlement Payment to the QSF, FXG will have no responsibility or liability for any amount of attorneys' fees or costs to Class Counsel or any other counsel for Plaintiffs or any Class Member in connection with the Released Claims or Plaintiffs' Released Claims, including those involved in the MDL action that was pending in the Northern District of Indiana (Case No. 3:05-MD-527 RM; MDL-1700) (the "MDL Action"). The Parties acknowledge that there is a potential lien on attorneys' fees and costs in this Lawsuit on the basis of work performed and expenses incurred on behalf of or for the benefit of Plaintiffs and Class Members in the MDL Action. Class Counsel represent that any such lien has been fully resolved by agreement between them and MDL counsel. The Parties agree that FXG has no responsibility or liability for any amount of MDL attorneys' fees or costs, or any other attorneys' fees or costs attributable to the Lawsuit. Plaintiffs and their undersigned counsel will indemnify FedEx Ground against any claims for fees or costs made by other counsel related to work performed in connection with the Lawsuit. Any attorneys' fees dispute between Class Counsel and any other attorney(s) will not interfere with the Settlement, the provisions of the Settlement Agreement, the dismissal of the Lawsuit, or the releases obtained pursuant to this Settlement Agreement. Except as noted in this subparagraph D regarding the MDL Action, Class Counsel represent and warrant that no other counsel has represented Plaintiffs or Class Members with respect to the Released Claims and Plaintiffs' Released Claims, and further represent and warrant that there are no claims for payment of attorneys' fees and costs by any other counsel for Plaintiffs or Class Members.

E.   Plaintiffs request that this Court retain jurisdiction over any disputes among the plaintiffs' attorneys concerning fair distribution of fees.

## IV.   COSTS OF NOTICE AND CLAIMS ADMINISTRATION

Separate from the Settlement Payment set forth in Sections II and III above, FXG will pay: (a) the costs of preparing and disseminating all Notices provided for in this Agreement, and (b) all other Administrative Expenses as defined above, including the costs of utilizing the Settlement Administrator. Other than those Administrative Expenses defined above, FXG shall not be responsible for any costs that may be incurred by Plaintiffs or Class Counsel, including in (a) responding to inquiries about the Agreement, the settlement, or the Lawsuit, (b) defending the Agreement or the settlement against any challenge to it, or (c) defending against any challenge to any order or judgment entered pursuant to the Agreement, unless otherwise specifically agreed by the Parties.

## V.   SETTLEMENT APPROVAL PROCESS AND PAYMENT DISTRIBUTION

The events set forth in this Section V, in addition to the occurrence of the "Effective Date" as described in Section I.D., are conditions precedent to this Agreement becoming effective.

A.    **Stay of Lawsuit.**

Subject to Court approval of this Agreement, the Parties agree to have all proceedings in the Lawsuit stayed and any pre-trial and trial deadlines and dates stricken.

B.    **Settlement Administrator Functions**

The Settlement Administrator shall be solely responsible for the following functions in accordance with the terms of this Agreement, the Preliminary Order, and the Final Approval Order:

1.    Provide for the Notice as approved by the Court to be sent by mail to all Class Members;

2.    Provide to FXG and Class Counsel, 14 days after the first mailing of the Notice and then updated every 14 days thereafter until the date of the Fairness Hearing, a list of the names and addresses of all Class Members who have submitted documents indicating that they wish to opt out of the Settlement;

3.    Mail settlement payments to Eligible Class Members, as ordered by the Court in the Final Approval Order, in accordance with Sections II and V.I of this Agreement;

4.    Mail payment(s) for attorney's fees and costs to Class Counsel, as ordered by the Court in the Final Approval Order, in accordance with Sections III and V.I. of this Agreement;

5.    Mail Incentive and Participation Awards to Plaintiffs, as ordered by the Court in the Final Approval Order, in accordance with Sections III and V.I of this Agreement;

6.    Establish, designate, and maintain the QSF as a "qualified settlement fund" under Internal Revenue Code § 468B and Treasury Regulation § 1.468B-1, for the purpose of resolving the contested claims of the Class Members;

7.    Maintain the assets of the QSF in a non-interest bearing escrow account segregated from the assets of FXG and any person related to FXG;

8.    Obtain an employer identification number (EIN) for the QSF pursuant to Treasury Regulation § 1.468B-2(k)(4);

9.    Prepare and file federal income tax returns for the QSF, as well as any other tax filings the QSF must make under federal, state, or local law;

10.   Cooperate with FXG to jointly file a relation-back election under Treasury Regulation § 1.468B-1(j)(2), if necessary, to treat the QSF as coming into existence as of the earliest possible date;

11.   Pay and deposit the federal taxes owed by the QSF under Treasury Regulation § 1.468B-2, as well as any state or local taxes owed by the QSF;

12. Prepare, file, and issue all necessary tax reporting forms for the QSF, including IRS Forms 1099 regarding the distribution of payments to Eligible Class Members, Class Counsel, and Plaintiffs;

13. Provide FXG with copies of all tax reporting and filings made for the QSF, including copies of the checks and IRS Forms 1099 issued to Eligible Class Members, Class Counsel, and Plaintiffs, and any other documentation to show that the tax reporting and filings were timely transmitted to the claimants and the applicable taxing authorities;

14. Pay any additional tax liabilities (including penalties and interest) that arise from the establishment and administration of the QSF solely from the assets of the QSF without any recourse against FXG for additional monies;

15. Within 30 days after the payment of all amounts pursuant to Section V.I below, provide to FXG and Class Counsel a statement of the total number of payments made and the total dollar amount paid to each Class Member, Class Counsel and Plaintiff (the "Final Accounting");

16. Liquidate any remaining assets of the QSF after all payments to Class Members, Class Counsel, and Plaintiffs have been made and all tax obligations have been satisfied, and distribute such assets as directed by the Court; and

17. Petition the Court for termination of the QSF once all of the duties listed above in subsections (a) to (u) have been completed.

C. **Preliminary Court Review.**

Within three days after the execution of this Agreement by all Parties, Class Counsel shall apply to the Court for entry of an order preliminarily approving this Settlement as fair and reasonable, setting a date for the Fairness Hearing, and approving distribution of the Notice to the Class ("Preliminary Order"). The Preliminary Order shall also designate Rust Consulting, Inc. as the Settlement Administrator and approve it to perform the functions identified in Section V.B. above, in accordance with the terms of this Agreement, the Preliminary Order, and the Final Approval Order.

D. **Notice of Proposed Settlement.**

1. The Notice (and any associated forms), as approved by the Court, will be sent by the Settlement Administrator to each Class Member by first-class Unites States Mail within ten (10) days after entry of the Order approving Notice. Before the mailing of such Notices, Class Counsel shall provide to FXG and the Settlement Administrator any updated addresses for Class Members as reflected on the class list. FXG will thereafter cause the Settlement Administrator to obtain address updates utilizing a National Change of Address database. In mailing such Notices, the Settlement Administrator will use any updated addresses thus obtained, and consult with the Parties to use the best possible mailing and/or e-mail addresses for Class Members. Any Notices returned to the Settlement Administrator by the Postal Service or otherwise will be re-mailed by the Settlement Administrator to any forwarding address within five (5) days following receipt of the returned mail.

2.     The Parties agree that the dissemination of the Notice by mail in the manner specified in this Section satisfies the legal notice requirements and due process.

3.     Class Counsel will send a short notice to any persons who were mistakenly included in the original list of potential class members that received original MDL Notice of Class Action, advising them that they were mistakenly included in the Class and that they are not eligible to receive a settlement award in this case.

E.     **Opt Outs.**

1.     Class Members shall have thirty (30) days from the mailing date on the Notice to submit an election to opt out of the Settlement and this Class Action.  Exceptions will be made only for individuals who, because of a change in address, did not receive a Notice in the first mailing.  In that event they will have 14 days from actual receipt or up to 14 days before the Final Approval Hearing, whichever comes first, to submit an election to opt out.

2.     To effectively opt out of the settlement, thereby excluding themselves from the Lawsuit, the settlement, and the Class, Class Members must timely mail a letter to the Settlement Administrator opting out of the case, as described in the Notice.  If a fully completed and properly executed Opt Out Letter is not received by the Court or Settlement Administrator from a Class Member postmarked on or before the deadline set forth in subparagraph V.E.1. above, then that Class Member will be deemed to have forever waived his or her right to opt out of the Class.  Class Members who timely submit Opt Out Letters shall have no further role in the Lawsuit, and for all purposes they shall be regarded as if they never were either a party to the Lawsuit or a Class Member, and thus they shall not be entitled to any benefit as a result of the Lawsuit, this settlement or this Agreement, nor will they have released by operation of this Agreement any claims they may have against the Releasees.

3.     This Settlement Agreement shall be binding on all Class Members who have not opted out of the class, including those who may be given class notice after the class list is amended.

F.     **Objections.**

1.     Class Members who do not opt out of the settlement pursuant to Section V.E. above shall have until 14 days before the Final Approval Hearing to file an objection to the Agreement.

2.     To be effective, any objection to the Agreement must be made in writing; must contain the information specified in the Notice; and must be mailed to Class Counsel  or the Court at least 14 days before the Final Approval Hearing.  The date of the postmark on the mailing envelope shall be the exclusive means to determine whether an objection is timely.  The Court may, at its discretion, choose to accept written objections after that date and may permit objectors who have not filed written objections to be heard at the Final Approval Hearing.

3.     At least 10 days before the Final Approval Hearing, Class Counsel shall provide to FXG and the Court a list of the names and addresses of all Class Members who have

submitted documents indicating that they wish to object to the Settlement, as well as copies of each objection received.

G.   **Final Payment Calculations.**

Ten (10) days before the Final Approval Hearing, Class Counsel will provide to FXG's counsel and the Settlement Administrator, in a form acceptable to both of them, a spreadsheet containing the final calculations pursuant to Sections II and III of this Agreement, including the payment amounts for each Eligible Class Member, the total Attorneys' Fees and Costs, and the Incentive and Participation Award amounts.

H.   **Fairness Hearing and Final Approval.**

1.      A Fairness Hearing will be scheduled no earlier than 60 days after entry of the Preliminary Order, but no earlier than 50 days after the latter of the dates on which the appropriate Federal official and the appropriate state officials are served with the notices required pursuant to the Class Action Fairness Act, 28 U.S.C. § 1715(d), which FXG counsel will accomplish within seven (7) days after entry of the Preliminary Order.

2.      No later than seven (7) days before the scheduled Fairness Hearing, Class Counsel shall apply to the Court for entry of an order granting final approval to this Settlement ("Final Approval Order"), along with an appropriate motion, which (1) grants final approval of the Settlement and this Agreement as fair, reasonable, and adequate to the Class; (2) authorizes the Settlement Administrator to pay all amounts due to Plaintiffs, Eligible Class Members, and Class Counsel under this Agreement, to the extent approved by the Court; (3) provides that the claims of Plaintiffs and Class Members shall be released in accordance with this Agreement; and; (4) preserves the Court's continuing jurisdiction over the administration of the Settlement and enforcement of this Agreement.

3.      Once an order finally approving the settlement has been entered, the Plaintiffs and FXG shall file a stipulation of dismissal with prejudice pursuant to Rule 41(a)(1)(A)(ii).

I.   **Distribution of Payments.**

1.      Subject to subparagraph V.I.2. below, within 10 business days following the Effective Date of the Settlement, FXG shall (through the Settlement Administrator) cause the QSF to distribute all amounts due to Eligible Class Members and Class Counsel under this Agreement, to the extent approved by the Court.

2.      As a condition precedent to such distribution, Class Counsel shall provide to the Settlement Administrator in a timely manner all information needed with respect to the issuance of the checks(s) for those amounts, including (a) an IRS Form W-9 executed by each Eligible Class Member, each Plaintiff, and each law firm receiving payment, verifying their respective tax identification and/or social security numbers; and (b) any revised Final Payment Calculations in the event that the Court orders changes to any payment amounts in the Final Approval Order or any other event occurs which alters any payment amounts.  If any Class Member fails or refuses to timely execute a Form W-9 and provide it to Class Counsel, that Class Member's

payment will not be made and the amount of the Settlement Payment by FXG to the QSF will be reduced accordingly.

3.      Checks paid to the Eligible Class Members shall remain valid and negotiable for one-hundred and twenty (120) days from the date of their issuance and will thereafter automatically be cancelled if not negotiated within that time. In the event of a Class Member's report of a lost or destroyed check within the 120-day period, the original check shall be canceled and a new check shall be issued to such Class Member, valid for 60 additional days.

4.      If any checks to Eligible Class Members are not cashed within the time set forth in paragraph V.I.3. above, the amount of such uncashed checks shall be used and paid to a cy pres beneficiary designated by FXG and approved by the Court..

5.      Payments to Eligible Class Members, the Attorneys' Fees and Costs, and the Incentive and Participation Awards will be reported to the IRS on 1099 Forms in the manner FXG and/or the Settlement Administrator in their sole discretion deems appropriate.

J.      **Cooperation and Return to Status Quo if Settlement is Not Approved.**

Plaintiffs, Class Counsel, and FXG will cooperate and take all reasonable actions to accomplish the above. FXG will obtain from the Settlement Administrator a written acknowledgement and acceptance of its duties under this Agreement, and FXG shall have a right to petition the Court for a remedy if FXG reasonably believes or suspects that the Settlement Administrator is failing to perform such duties. If the Court fails to enter either the Preliminary Review Order or the Final Approval Order, Plaintiffs, Class Counsel, and FXG will use all reasonable efforts that are consistent with this Agreement to cure any defect identified by the Court. If, despite such efforts, the Court does not enter the Preliminary Review Order and Final Approval Order, the Settlement will be deemed void, and the Parties will return to their pre-settlement positions in the Lawsuit.

VI.     **RELEASE**

By executing this Agreement, the Parties acknowledge that, upon entry of the Final Approval Order by the Court, the Lawsuit shall be dismissed with prejudice, an order of dismissal with prejudice shall be entered, and all Released Claims shall thereby be conclusively settled, compromised, satisfied, and released as to the Releasees. The Final Approval Order shall provide for and effect the full and final release, by Plaintiffs and all Class Members, of all Released Claims.   Additionally, for those Plaintiffs receiving Incentive and Participation Awards, the entry of the Final Approval Order will also provide for and effect the full and final release by those Plaintiffs of all Plaintiffs' Released Claims.

Plaintiffs and the Class Members hereby expressly, knowingly, and voluntarily waive the provisions of Section 1542 of the California Civil Code, which provides as follows:

A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

Plaintiffs and the Class Members expressly waive and relinquish all rights and benefits that they may have under, or that may be conferred upon them by, the provisions of Section 1542 of the California Civil Code and of all similar laws of other States, to the fullest extent that they may lawfully waive such rights or benefits pertaining to the Released Claims.

In connection with such waiver and relinquishment, Plaintiffs and Class Members agree that the release applies to every Plaintiff and Class Member regardless of whether he/she received a payment through this Settlement and regardless of whether he/she or their attorneys may hereafter discover claims or facts in addition to or different from those which they now know or believe to exist with respect to the Released Claims, but that it is their intention to hereby fully, finally, and forever settle and release all of the Released Claims, known or unknown, suspected or unsuspected, that they have against Releasees. In furtherance of such intention, the release herein given to the Releasees by Plaintiffs and Class Members shall be and remain in effect as a full and complete general release of all claims notwithstanding the discovery or existence of any such additional different claims or facts.

## VII.   COVENANT NOT TO SUE

Plaintiffs, on behalf of themselves, the Class Members, and any business entities they or the Class Members control or controlled that contracted with FXG, (a) covenant and agree that neither Plaintiffs, nor the Class Members, or any business entities they or the Class Members control or controlled that contracted with FXG, nor anyone authorized to act on behalf of any of them, in either their personal or corporate capacity, will commence, authorize, or accept any benefit from any judicial or administrative action or proceeding, other than as expressly provided for in this Settlement, against Releasees, or any of them, in either their personal or corporate capacity, with respect to any claim, matter, or issue that in any way arises from, is based on, or relates to any alleged loss, harm, or damages allegedly caused by Releasees, or any of them, in connection with the Released Claims; (b) agree that this Settlement shall be a complete bar to any such action.

## VIII.   REPRESENTATIONS AND WARRANTIES

Each of the Parties represents and warrants to, and agrees with, each of the other Parties as follows:

A.      Each of the Parties has had the opportunity to receive, and has received, independent legal advice from his or its attorneys regarding the advisability of the settlement and executing this Agreement, and has had the opportunity to learn the legal and income-tax consequences of this settlement, and fully understands and accepts the terms of this Agreement.

B.      Plaintiffs, on behalf of themselves and Class Members, represent and warrant that no portion of any claim, right, demand, action, or cause of action against any of the Releasees that Plaintiffs and Class Members have or may have arising out of the Lawsuit or pertaining to the independent-contractor classification or otherwise referred to in this Agreement, and no portion of any recovery or settlement to which Plaintiffs and Class Members may be entitled, has been assigned, transferred, or conveyed by or for Plaintiffs and Class Members in any manner; and no person other than Plaintiffs and Class Members have any legal or equitable interest in the

claims, demands, actions, or causes of action referred to in this Agreement as those of Plaintiffs and Class Members themselves.

C.      Plaintiffs, on behalf of themselves and Class Members, represent and warrant that, to the extent any other person or entity (including, but not limited to, insurers, lien holders, business partners, related or associated business entities, or other creditors) has any judgment, lien, subrogation interest, or other interest in the claims that are part of this suit (or the recovery of damages from said claims), Plaintiffs and/or Class Members shall satisfy them.  Plaintiffs, on behalf of themselves and Class Members, agree that they shall release, hold harmless, indemnify, and defend the Releasees from and against any and all claims, demands, actions, causes of action, suits or complaint, known or unknown, that may be brought against any Releasee as a result of Plaintiff(s)' and/or Class Members' failure to pay any such judgment, liens, interests, or claims that exist arising out of this dispute, including attorneys' fees incurred in responding to any demands, proceedings or threatened proceedings involving any such asserted lien.

D.      None of the Parties relies or has relied on any statement, representation, omission, inducement, or promise of any other Party (or any officer, agent, employee, representative, or attorney for any other Party) in executing this Agreement, or in making the Settlement provided for herein, except as expressly stated in this Agreement.

E.      Each of the Parties has investigated the facts pertaining to the Settlement and this Agreement, and all matters pertaining thereto, to the full extent deemed necessary by that Party and his or its attorneys.

F.      Each of the Parties has carefully read, and knows and understands, the full contents of this Agreement and is voluntarily entering into this Agreement after having had the opportunity to consult with, and having in fact consulted with, his or its attorneys.

G.      Each term of this Agreement, under the titles of the various paragraphs, is contractual and not merely a recital.

H.      Each of the Parties has participated in the drafting of all provisions of this Agreement, has had an adequate opportunity to read, review, and consider the effect of the language of this Agreement, and has agreed to its terms.  Each of the Parties expressly disclaims any claim of unequal bargaining power.

I.      This Agreement constitutes and comprises the entire agreement among the Parties with respect to the subject matter hereof.  It supersedes all prior and contemporaneous oral and written agreements and discussions.  It may be amended only by an agreement in writing, signed by all Parties hereto.

## IX.   CONFIDENTIALITY

A.      Class Counsel agree that they will not issue any press releases, initiate any contact with the press, or provide any information to the press or to any publications about this Lawsuit or the terms and/or fact of this Settlement and/or Agreement.  As an absolute condition of this Agreement, Class Counsel will not post (or cause to be posted) anything on the internet, or their

website, disclosing any terms of this Settlement.  Class Counsel will also not post anything regarding the fact of this Lawsuit or Settlement.

B.      Class Counsel will maintain the confidentiality of all documents and data that were produced by FXG in order to facilitate settlement negotiations.  Plaintiffs, Class Members and Class Counsel agree to destroy all documents produced by FXG in this litigation (including without limitation all copies of data produced during settlement negotiations), and to maintain the confidentiality of all documents and data that were produced confidentially during the litigation.

C.      Except as may be required by the Court, the Class Notice and Motion for Preliminary Approval will only disclose the total Settlement Sum in Exhibit 3, and all other publicly filed documents relating to this Settlement will not disclose the total Settlement Sum.

## X.      MISCELLANEOUS

### A.      Conditional Nature of Agreement

At Plaintiffs' and FXG's option, this Agreement shall become null and void, and no obligation on the part of any of the Parties will accrue, if the Court materially alters any of the terms of this Agreement to the detriment of any Party, or fails to enter the Preliminary Approval Order or the Final Approval Order in substantially the form submitted by the Parties.  To exercise such an option, Plaintiff or FXG shall give to the other written notice by email and hard delivery within 10 days of the event triggering the exercise of the option.

### B.      Severability

None of the terms of this Agreement is severable from the others.  If a court should rule that any term is void, illegal, or unenforceable for any reason, however, FXG, in its sole discretion, and Plaintiffs, in their sole discretion (but acting in accord with their duties and obligations as representatives of the Class), may elect to waive any such deficiency and proceed with the settlement under the terms and conditions ultimately approved by the Court.

### C.      Effectiveness, Amendments, and Binding Nature

This Agreement may be amended only by written agreement signed by all Parties hereto. Except as otherwise stated above, each of the Parties, including Plaintiffs on behalf of themselves and Class Members, expressly accepts and assumes the risk that, if facts or laws pertinent to matters covered by this Agreement are hereafter found to be other than as now believed or assumed by that party to be true or applicable, this Agreement shall nevertheless remain effective.

This Agreement is binding on, and shall inure to the benefit of, the Parties, including Class Members, their respective agents, employees, representatives, officers, directors, parents, subsidiaries, assigns, executors, administrators, insurers, and successors in interest.  All Releasees other than FXG, who is a Party, are intended to be third-party beneficiaries of this Agreement and the release provisions herein.

D.   **Cooperation in Implementation**

Each of the Parties and their respective counsel agree to cooperate and/or prepare and execute any additional documents that may reasonably be necessary to effectuate the terms of this Agreement.

E.   **Governing Law**

This Agreement shall be construed and governed in accordance with state procedural law and the substantive laws of the State of New Hampshire, except that all matters of federal tax law and the QSF's compliance with Internal Revenue Code §468B and the Treasury Regulations thereunder shall be governed by federal income tax law.

F.   **No Admission of Liability**

The Parties are entering into this Settlement for the purpose of compromising and settling disputed claims. Nothing in this Agreement or in the documents relating to the settlement shall be construed, deemed, or offered as an admission by any of the Parties, for any purpose in any judicial or administrative action or proceeding, whether in law or in equity, regardless of whether this Agreement ultimately becomes effective. FXG and the Releasees disclaim any liability to the Plaintiffs and Class Members for any alleged violation of their rights, or for any alleged violation of any order, law, statute, duty or contract. FXG does not waive its right to object to the certification of any class in this Lawsuit for any other purposes in the event that this Agreement shall be vacated or become void for any other reason, including failure of the Court to grant preliminary or final approval to the Agreement.

G.   **Liability for Tax Payment and Reporting**

The Settlement Administrator shall report payments on Forms 1099 as set forth above. No representation has been made to Class Members or their attorneys by FXG regarding the taxability of any portion of their payments under this Agreement. Class Members shall be responsible for Taxes on their individual settlement proceeds as a result of this settlement, and Class Counsel shall be responsible for Taxes on any attorneys' fees and costs received as a result of this settlement. Class Members shall indemnify FXG for any nonpayment of Class Members' tax obligations and attorneys' fees incurred in responding to an inquiry, demand, proceeding or threatened proceeding by any taxing authority. Class Counsel shall indemnify FXG for any nonpayment of Class Counsel's tax obligations and attorneys' fees incurred in responding to an inquiry, demand, proceeding or threatened proceeding by any taxing authority. The term "Tax" includes any federal, state or local taxes due as a result of payments by FXG under this Agreement, including but not limited to liability for withholdings, FICA or FUTA, and any interest and penalties which may be assessed for nonpayment or late payment of such taxes.

H.   **Bankruptcy**

Settlement of the claims of any Plaintiff and/or Class Member with an open bankruptcy matter as of the date of payment is contingent upon approval of the Bankruptcy Court. The Parties shall cooperate with the requirements of the bankruptcy process, including substituting the Bankruptcy Trustee as Plaintiff in the case if necessary to finalize settlement. Such Plaintiffs

Case 1:05-cv-00145-PB   Document 93-2   Filed 09/04/14   Page 18 of 26

and/or Class Members and their counsel shall take all necessary steps to obtain the Bankruptcy Court's approval of the settlement.

    I.    **Notices**

Unless otherwise specifically provided herein, all notices, demands or other communications given hereunder shall be in writing and delivered and addressed as follows:

To Class Counsel:

| | |
|---|---|
| Jordan M. Lewis | Susan Ellingstad |
| Kelley Uustal, PLC | Lockridge Grindal Nauen P.L.L.P. |
| 700 S. E. 3rd Avenue | 100 Washington Avenue S |
| Suite 300 | Suite 2200 |
| Fort Lauderdale, FL 33316 | Minneapolis, MN 55401 |

Edward O'Brien
O'Brien Law Firm, PC
One Sundial Avenue
Fifth Floor
Manchester, NH 03103

To Defendant's Counsel:

| | |
|---|---|
| James C. Rehnquist | Lucy Karl |
| Goodwin Procter | Shaheen & Gordon, P.A. |
| Exchange Place | 107 Storrs Street |
| 53 State Street | P.O. Box 2703 |
| Boston, MA 02109 | Concord, NH 03302-2703 |

## XI.   SIGNATURES

This Agreement may be executed in counterparts, and, when so executed, shall constitute a binding original. A signature, or copy of a signature, transmitted electronically, including by facsimile or email, shall serve as an original for all purposes.

| Plaintiffs: | Defendant: |
|---|---|
| *Robert Gennell Jr.* | |
| _____ | _____ |
| Robert Gennell, Jr. | By: |
| Date: _____ | FedEx Ground Package System, Inc. |
| | Its: |
| _____ | |
| Kimball P. Rice | Date: _____ |
| Date: _____ | |
| _____ | |
| Donald Swazey | |
| Date: _____ | |
| _____ | |
| Gary Terrio | |
| Date: _____ | |

| Plaintiffs: | Defendant: |
| --- | --- |
| Case 1:05-cv-00148-PB   Document 93-2   Filed 09/04/14   Page 20 of 26 | |
| | |
| _____ | _____ |
| Robert Gennell, Jr. | By: |
| Date: _____ | FedEx Ground Package System, Inc. |
| | |
| | Its: |
| | |
| Kimball P. Rice | Date: _____ |
| Date: _____ | |
| | |
| | |
| _____ | |
| Donald Swazey | |
| Date: _____ | |
| | |
| | |
| _____ | |
| Gary Terrio | |
| Date: _____ | |

## XI.   SIGNATURES

This Agreement may be executed in counterparts, and, when so executed, shall constitute a binding original. A signature, or copy of a signature, transmitted electronically, including by facsimile or email, shall serve as an original for all purposes.

| Plaintiffs: | Defendant: |
|---|---|
| _____<br><br>Robert Gennell, Jr.<br><br>Date: _____ | _____<br><br>By: _____<br><br>FedEx Ground Package System, Inc.<br><br>Its: _____ |
| _____<br><br>Kimball P. Rice<br><br>Date: _____ | Date: _____ |
| _____<br><br>Donald Swazey<br><br>Date: _9-4-14_ | |
| _____<br><br>Gary Terrio<br><br>Date: _____ | |

Page 1 of 2

## XI.   SIGNATURES

This Agreement may be executed in counterparts, and, when so executed, shall constitute a binding original. A signature, or copy of a signature, transmitted electronically, including by facsimile or email, shall serve as an original for all purposes.

| Plaintiffs: | Defendant: |
|---|---|
| _____ | _____ |
| Robert Gennell, Jr. | By: |
| Date: _____ | FedEx Ground Package System, Inc. |
| | |
| | Its: |
| _____ | |
| Kimball P. Rice | Date: _____ |
| Date: _____ | |
| | |
| _____ | |
| Donald Swazey | |
| Date: _____ | |
| | |
| _____ | |
| Gary Terrio | |
| Date: 8/29/2014 | |

Lance Tucker

Date: _____

_____

Shane Tucker

Date: _____

APPROVED AND ACKNOWLEDGED:

_____

Counsel for Plaintiffs

and the Class

APPROVED AND ACKNOWLEDGED:

_____

Counsel for FedEx Ground Package System, Inc.

Lance Tucker

Date: _____

Shane Tucker _____

Date: _____

APPROVED AND ACKNOWLEDGED:

APPROVED AND ACKNOWLEDGED:

_____

_____

Counsel for Plaintiffs

Counsel for FedEx Ground Package System, Inc.

and the Class

_____

Lance Tucker

Date: _____

_____

Shane Tucker

Date: _____

APPROVED AND ACKNOWLEDGED:

_____

Counsel for Plaintiffs

and the Class

APPROVED AND ACKNOWLEDGED:

_____

Counsel for FedEx Ground Package System, Inc.

Case 1:05-cv-00145-PB   Document 93-2   Filed 09/04/14   Page 26 of 26

_____

Lance Tucker

Date: _____

_____

Shane Tucker

Date: _____

APPROVED AND ACKNOWLEDGED:

_____

Counsel for Plaintiffs

and the Class

APPROVED AND ACKNOWLEDGED:

s/James C. Rehnquist
_____
Counsel for FedEx Ground Package System, Inc.

Case 1:05-cv-00145-PB   Document 93-3   Filed 09/04/14   Page 1 of 8

# EXHIBIT 1

Case 1:05-cv-00145-PB   Document 93-3   Filed 09/04/14   Page 2 of 8

| LAST NAME | FIRST NAME | MIDDLE NAME | BUSINESS ENTITY |
|---|---|---|---|
| ADAMS | THOMAS | | |
| ALBRO | CLIFFORD | LEE | |
| ALLEN | ROBERT | | |
| ANDREWS | MATHEW | WAYNE | |
| ARCHAMBAULT | PHILIP | ARTHUR | |
| ASANTE | KWASI | | |
| ATLAS | PAUL | | |
| AUKER | TIMOTHY | STAUFFER | |
| BALZER III | CHARLES | CANFIELD | |
| BARRETT | DAVID | | |
| BATLEY | CRAIG | | |
| BAUSHA | KEVIN | | KMB FREIGHT LLC |
| BEAUCLAIR | DERRICK | | |
| BEAULIEU | BRYANT | | |
| BEAULIEU | RALPH | | |
| BELAND | JEFF | | |
| BENWARE | JASON | M | |
| BILLS | JOSEPH | E | DBA: MICAH'S TRANSPORT |
| BILLS SR | JOSEPH | C | |
| BISSON | MIKE | | |
| BLAISDELL | TED | | |
| BOLSTER | PHILIP | | |
| BOUCHARD | ROGER | J | |
| BOWMAN | MICHAEL | R | |
| BRISSON | CLAUDE | ALCIDE | |
| BROWN | SCOTT | D | |
| BULIS | BRIAN | TIMOTHY | |
| BUMFORD | DONALD | | |
| BURNETT | BRIAN | LEE | |
| BURNS | DENNIS | | |
| CAMPBELL | JOHN | FREDERICK | |

Case 1:05-cv-00146-PB   Document 93-3   Filed 09/04/14   Page 3 of 8

| LAST NAME | FIRST NAME | MIDDLE NAME | BUSINESS ENTITY |
|---|---|---|---|
| CARBONNEAU | DANIELLE | | |
| CHAMBERLIN | DANA | | |
| CHAMBERS | RICKY | J | |
| CHARRON | STEVEN | A | |
| CHITAKUNYE | ISHENUESU | | |
| CHITAKUNYE | TIDINGS | | |
| CHITAKUNYE | MEMORY | | TRANSHIP SOLUTIONS LLC |
| CLARK | PHILIP | JAMES | |
| COLBY | JOHN | | |
| COMSTOCK | DAVID | | |
| CONDI | JOSEPH | | |
| CONSTANT | DAVID | FREDERICK | |
| COULTER | LARRY | | |
| CRANE | GREGORY | A | |
| CRANE | MICHAEL | GREGORY | |
| CROKE | BRENDAN | | BRENDAN PARCEL SERVICE LLC |
| CROSBY | GUY | W | |
| CROSS JR | GARY | BLAINE | |
| CURRIER JR | WILLIAM | JOHN | |
| DELIN | ANDREW | | |
| DENTREMONT | MICHAEL | | |
| DEPRETE | ALFRED | | |
| DESANTIS | PETER | R | |
| DOYON | NORMAN | | |
| DOYON | NORMAN | R | |
| DRAPER | DEAN | | DRAPER MCFARLANE CORP |
| DWIGHT | STUART | | |
| EVANSON | BRIAN | | |
| EZEQUELLE | ANDREW | MARTIN | |
| FAULKNER III | BRUCE | A | ROCKET DOG EXPRESS |
| FEINDEL | JOSEPH | | |

Case 1:05-cv-00145-PB   Document 93-3   Filed 09/04/14   Page 4 of 8

| LAST NAME | FIRST NAME | MIDDLE NAME | BUSINESS ENTITY |
|-----------|-----------|-------------|-----------------|
| FELTON | RUSSELL | | |
| FERGUSON | ROBERT | DAVID | |
| FERRO | ANTHONY | TIM | |
| FITZGERALD | STEVEN | | |
| FOSS | DAVID | | |
| FREDETTE | RONALD | PATRICK | |
| FRENCH | SCOTT | E | |
| FULMORE | JAMES | | |
| GAGNON | MARK | | |
| GALLANT | TIMOTHY | | |
| GEBHARDT | DAYNA | LYNN | |
| GENDRON | PAUL | | |
| GENNELL JR. | ROBERT | | STREBOR PACKAGE SYSTEM |
| GEORGE IV | ANTHONY | C | |
| GIOIOSA | RICHARD | | |
| GIROUARD | BRUCE | MARK | |
| GLIDDEN | DAVID | | |
| GLODON | AYODELE | ANTHONY | |
| GONTHIER | LEE | ALBERT | |
| GOSNELL | JONAH | | |
| GRANT | EARL | | |
| GREENWOOD | JOHN | | |
| GRIJALVA | ADAM | | |
| GRUHN | FRANK | NOEL | |
| GRUNDITZ JR | ROBERT | O | |
| GUNTHER | RONALD | | |
| HADLEY | RICHARD | | |
| HALL | CLINTON | D | |
| HALL JR | JAMES | F | |
| HARRIS | BRADLEY | | |
| HARVILL | LAWRENCE | EDWARD | |

Case 1:05-cv-00145-PB   Document 93-3   Filed 09/04/14   Page 5 of 8

| LAST NAME | FIRST NAME | MIDDLE NAME | BUSINESS ENTITY |
|---|---|---|---|
| HEMINGWAY | DOUGLAS | | |
| HERR | BILL | M | HFB LLC |
| HILL | DAVID | J | |
| HOWE | BRIAN | S | |
| HUNT | NATHAN | | |
| HUNTINGTON | MICHAEL | G | |
| HURLEY | WILLIAM | | |
| HYNES | PATRICK | | |
| JACOBSEN | RALPH | | |
| JAMES | ANTHONY | | |
| JARRAIT | JON | MARC | |
| JOHNSON | BILL | A | |
| JOHNSTON | ROBERT | | |
| JONES | MICHELLE | | PMS TRANSPORTATION LLC |
| JOYCE | MICHAEL | | |
| KELLEY | NIKKOLE | | |
| KNOWLES | KEITH | WADE | |
| LAPOINTE | TIMOTHY | | |
| LAROCHE | MARIE | B | |
| LEAVITT | JOSHUA | | |
| LEBLANC | RICKY | J | |
| LEVESQUE | SCOTT | LAURENT | |
| LUCIER | GARY | | |
| LUOPA | TIMOTHY | | |
| MANFREDI | THOMAS | | |
| MCHUGH | DON | RICHARD | |
| MCLAIN | SCOTT | | |
| MILLER | JAMES | | |
| MOONEY | JOHN | DAVID | |
| MUENKAL | EDWARD | | |

Case 1:05-cv-00145-PB   Document 93-3   Filed 09/04/14   Page 6 of 8

| LAST NAME | FIRST NAME | MIDDLE NAME | BUSINESS ENTITY |
|---|---|---|---|
| MULLIN | JEFFREY | ROBERT | |
| MWANIKI | SAM | KIANGONYO | |
| NEKOLEK | STEPHEN | GEORGE | FREE STATE TRUCKING CO INC. |
| NEPVEU | DONNA | | BLITZEN LLC |
| NEWBERRY | JAMES | M | |
| NGANGA | JAMES | MBURU | MERRIMART INTERNATIONAL INC |
| NYIRI | ALAN | | |
| OBORNE | FRED | | |
| OLBETER | MICHAEL | J | OLBS ENTERPRISES INC. |
| OUELETTE | LAURENCE | | DAMARIS TRANSPORT LLC |
| OWENS | BEN | | |
| PARMELE | JON | | |
| PARNELL | KEN | | |
| PAROLINE JR | JAMES | ARTHUR | |
| PELLETIER | GREG | A | |
| PERULLO | LAWRENCE | JAMES | |
| PILGRIM | STEPHEN | | |
| PILGRIM | STEVE | | |
| POLAND | GLENN | | |
| POMERLEAU | JEFFREY | | |
| POWERS | JAMES | F | |
| PRICE-BROWN | CHARLENE | E. | |
| REARDON | WILLIAM | | |
| REPACK | KEITH | | |
| REYCROFT | TIM | | |
| RICE | KIMBALL | PARKER | |
| RICHER | DALE | | |
| RIDLEY | RALPH | G | |
| RIES | KEN | | |
| ROBERGE | JACQUES | | |

| LAST NAME | FIRST NAME | MIDDLE NAME | BUSINESS ENTITY |
|---|---|---|---|
| ROBINSON | SHANE | | LIBERTY PARCEL SERVICE F/K/A ELEVATE PARCEL SERVICE |
| RODMAN | BRUCE | | |
| ROWE | LINWOOD | G | |
| ROWLAND | MICHAEL | | |
| RUSSO | MARIO | | |
| SADIK | ABDETRRAHMAN | | |
| SCHMIDT | CHRISTOPHER | ALLEN | |
| SELIMOVIC | FIKO | | |
| SHEEDY | ERIC | | P&D PACKAGE DELIVERY SERVICES INC |
| SMART | GARY | RICHARD | |
| SOUCY | MICHELLE | | |
| STANLEY | TIM | | |
| STEPHENS | DANA | E | |
| STERITI | PETER | D | |
| STEWART | FRANK | | |
| SUTTON | BRETT | | |
| SWAZEY | DONALD | S | |
| TALBOT | TIMOTHY | | TALBOT DISTRIBUTION LLC |
| TATTERSALL | RAY | | |
| TAYLOR | DAVID | | |
| TEJADA | YOLDYS | | YT ENTERPRISES LLC |
| TERRIO | GARY | | |
| TERWILLIGER | KEVIN | | |
| THERRIEN | PHILLIP | A | |
| THURSTON | ROBERT | D | |
| TOMER | FRANK | | |
| TRACHIM | JAY | | |
| TREMBLAY | ERNEST | | |
| TUCKER | SHANE | | SHANE'S PARCEL SERVICE LLC |

Case 1:05-cv-00145-PB   Document 93-3   Filed 09/04/14   Page 8 of 8

| LAST NAME | FIRST NAME | MIDDLE NAME | BUSINESS ENTITY |
|---|---|---|---|
| TUCKER | LANCE | | |
| ULLO JR | THOMAS | E | |
| VAILLANCOURT | LYNN | | |
| VAN GELDER | SCOTT | | |
| VANLENTEN | CHRISTOPHER | | |
| VANLENTEN | LESZEK | ROTH | |
| VAUGHN | RONALD | | |
| WALDMANN | SHAWN | TIMOTHY | |
| WALKER | DANIEL | | DC WALKER TRANS & |
| WEAKLEY | JEFFREY | SCOTT | |
| WETTIG | DONALD | E | |
| WHEELER | MICHAEL | | |
| WILBUR | CHRISTOPHER | | |
| WOODAMAN | WILLIAM | B | |
| WOODBURY JR | DAVID | MARSTON | |
| YEARGLE | DAVID | | |
| YORK | MARK | | |
| ZASTKO | PETER | V | |

Case 1:05-cv-00145-PB   Document 93-4   Filed 09/04/14   Page 1 of 7

# EXHIBIT 2

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW HAMPSHIRE

Robert GENNELL, Jr., *et al.*,

      Plaintiffs,               CASE NO. 1:05-CV-00145 (PB)

v.

FEDEX CORPORATION; FEDEX GROUND
PACKAGE SYSTEM, INC.; and FEDEX
HOME DELIVERY (a division thereof),

      Defendants.

_____/

### [PROPOSED] ORDER GRANTING
### JOINT MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION
### SETTLEMENT, FOR APPROVAL TO DISTRIBUTE CLASS NOTICE AND
### TO SET FINAL FAIRNESS HEARING

WHEREAS, Plaintiffs filed this putative class action in April 2005;

WHEREAS, Plaintiffs asserted a variety of New Hampshire common law and statutory

legal claims arising from their contention that Defendant had misclassified them as independent

contractors;

WHEREAS, Defendant denies Plaintiffs' allegations and contests liability with respect to

any and all facts alleged and claims asserted in this action and further denies that Plaintiffs or

Class Members have suffered any damages as a result of the alleged conduct;

WHEREAS, Plaintiffs and Defendant have reached agreement on the terms of a

settlement on behalf of the class certified by the MDL Court in 2008 and those terms have been

memorialized in a Settlement Agreement, dated September 4, 2014;

WHEREAS, Plaintiffs have submitted a Joint Motion for Preliminary Approval of Class

Action Settlement; and

WHEREAS, in the context of the proposed settlement and for settlement purposes only, Defendant joins the Motion for Preliminary Approval ("Motion").

NOW, THEREFORE, having considered the Joint Motion and supporting memorandum,

**IT IS HEREBY ORDERED AS FOLLOWS:**

1.      The terms of the Settlement Agreement are preliminarily approved, as set forth below, subject to further consideration at a Fairness Hearing, which shall be held before this Court at a time and place designated in paragraph 6 of this Order. The Settlement Agreement is incorporated by reference in this Order.

2.      Pursuant to Fed. R. Civ. P. 23, the terms of the Settlement Agreement are preliminarily approved as (a) fair, reasonable, and adequate in light of the relevant factual, legal, practical and procedural considerations of the action; (b) free of collusion to the detriment of the class members; and (c) within the range of possible final judicial approval, subject to further consideration thereof at the Fairness Hearing described in paragraph 9 of this Order. Accordingly, the Settlement is sufficient to warrant notice thereof, as set forth below, and a full hearing.

3.      The Court has received and reviewed the proposed form of Notice to Settlement Class Members ("Notice") attached as Exhibit A. The proposed Notice in the form submitted to the Court is hereby approved. The Court further finds that notice by mail is the most effective form of notice under the circumstances of this case, where class members have been identified by Defendant's records. As provided in the Settlement Agreement, the Settlement Administrator shall mail (or cause to be mailed) the Notice to the class members. Notice shall be mailed within 7 days upon entry of the preliminary order. If any Notice is returned as undeliverable, the Settlement Administrator shall re-mail the Notice to the forwarding address, if any, provided on

the face of the returned mail. If the returned mail does not reflect a forwarding address, then neither class counsel nor any other party shall have any further obligation to re-mail the Notice.

      4.     Any class member who wishes to be excluded from and not be bound by the Settlement Agreement must complete and mail a request for exclusion to the Settlement Administrator postmarked no later than 30 days after transmittal of the Notice with certain exceptions identified in the parties' Settlement Agreement. For a class member's opt-out to be valid, it must be timely (as judged by the postmark deadline set forth above) and (a) state the Class Member's full name, address, and telephone number; (c) state unequivocally that the Class Member wishes to opt out from the settlement; and (d) include the Class Member's signature (an attorney's signature is not sufficient). Any class member who does not submit a timely opt-out, and otherwise comply with all requirements for requesting exclusion from the classes as set forth above and in the Notice, shall be bound by the Settlement Agreement, including the Release provisions therein, and any Final Approval and Final Approval Order entered in the action. Further, any class member who is a successful opt-out will be deemed to have waived any rights or benefits under the settlement, and will have no standing to object to the settlement or to seek to intervene in the Action. On or before the date of the Fairness Hearing, class counsel and defendants' counsel shall create and jointly file with the Court a comprehensive list of opt-outs.

      5.     Any class member who does not opt out and who wishes to object to the settlement, in whole or in part, must file a written objection with the Court or to Plaintiffs' lead counsel no later than 14 days before the date of the Final Approval Hearing at a date and time to be determined. To be considered valid, each objection must be timely (as judged by the filing deadline set forth above) and (a) provide the class member's full name, address, signature, and telephone number; (b) explain the basis of the objection; and (c) state whether the objector

intends to appear at the Final Approval Hearing.  Any class member who does not submit a

timely and valid objection in complete accordance with this Order, the Notice and the Settlement

Agreement shall not be treated as having filed a valid objection to the settlement.  Objections

that are untimely and/or otherwise invalid will not be considered by this Court.  In the event any

objections are filed, Plaintiffs and/or Defendant may file any responses to any objections no later

than 7 days prior to the Final Approval Hearing.

      6.     A Fairness Hearing shall be held before the undersigned at a date and time to be

determined, in the United States District Court for the District of New Hampshire, 55 Pleasant

Street, Concord, NH 03301, to determine, among other things; (a) whether the proposed

settlement should be approved as fair, reasonable, and adequate; (b) whether the Action should

be dismissed with prejudice pursuant to the terms of the Settlement Agreement; (c) whether class

members should be bound by the release set forth in the Stipulation and Settlement Agreement;

(d) the amount of attorneys' fees and costs to be awarded to class counsel; and (f) the amount to

be awarded to Plaintiffs for their services as class representatives, if any.  This hearing may be

postponed, adjourned, or continued by order of the Court without further written notice to the

class.

      7.     Rust Consulting, Inc. is designated and approved as the Settlement Administrator

to perform the functions identified in Sections II and V of the Settlement Agreement, including

but not limited to the establishment of the Qualified Settlement Fund for the purpose of resolving

the contested claims, as described more fully in Sections II and V of the Settlement Agreement

pursuant to Section 468B of the Internal Revenue Code and Treas. Reg. § 1.468B-1, 26 CFR

§ 1.468B-1, et. seq. and this Order.

      8.     Memoranda in support of the settlement, and applications for awards of

attorneys' fees, costs, settlement administration expenses, and any service awards, shall be filed with the Court no later than seven days before the Fairness Hearing.

9.  All other events contemplated by the Settlement Agreement to occur after this Order and before Final Approval shall be governed by the Settlement Agreement, to the extent not inconsistent.

10.  The parties are authorized to establish the means necessary to administer the Settlement.

11.  All proceedings in the action, other than those that may be necessary to carry out the terms and conditions of the Settlement Agreement or related and/or incidental responsibilities are stayed and suspended until further order of this Court.

12.  If Final Approval of the settlement is not granted, or if the settlement is terminated for any reason, the settlement and all proceedings had in connection shall be without prejudice to the *status quo ante* rights of the parties to the action, and all orders issued pursuant to the settlement shall be vacated. In such an event, the settlement and all negotiations concerning it shall not be used or referred to in this action for any purpose whatsoever. This Order shall be of no force or effect if Final Approval does not occur for any reason, and nothing in this Order shall be construed or used as an admission, concession, or declaration by or against defendants, of any fault, wrongdoing, breach, or liability. Nor shall this Order be construed by or against Plaintiffs or the Class Members that their claims lack merit or that the relief requested in this action is inappropriate, improper, or unavailable, or as a waiver by any party of any defenses it may have.

13.  Neither the settlement nor the Settlement Agreement constitutes an admission, concession, or indication by the parties of the validity of any claims or defenses in the action; or

of any wrongdoing, liability, or violation of law by the defendants, who vigorously deny all of the claims and allegations raised in the action.

14.     The Court reserves the right to approve the settlement with such modifications, if any, as may be agreed to by class counsel and defendants' counsel without future notice to the class members.

15.     Between the date of the entry of this Order and the date of the Fairness Hearing, the classes and each class member shall be enjoined from initiating any claim, suit or proceeding against the defendants with respect to any claim that is the subject of the settlement.

_____
Hon. Paul Barbadoro
United States District Judge

Case 1:06-cv-00145-PB   Document 93-5   Filed 09/04/14   Page 1 of 6

# EXHIBIT A

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW HAMPSHIRE

**IF YOU PROVIDED PACKAGE PICK-UP AND DELIVERY SERVICES FOR
FEDEX GROUND PACKAGE SYSTEM, INC. ("FEDEX GROUND") OR FEDEX HOME DELIVERY ("FXG")
FROM A NEW HAMPSHIRE TERMINAL OR WITHIN NEW HAMPSHIRE,
YOU MAY BE ELIGIBLE TO RECEIVE MONEY FROM A CLASS ACTION SETTLEMENT.**

*This Notice may affect your rights so please read it carefully.*

- A proposed settlement has been reached in a class action, *Robert Gennell, v. FedEx Ground Package System, Inc.*, Case No. 1:05-CV-00145 (PB), a case arising out of FedEx's classification of certain delivery drivers as independent contractors and not as employees.

- The settlement provides for the mailing of checks to all class members who complete and mail back the enclosed W-9 form before the claims deadline; it also provides class members with the right to exclude themselves from the class or to remain in the class but object to the settlement, provided they do so before the relevant deadline stated below.

| SUMMARY OF YOUR LEGAL RIGHTS AND OPTIONS | |
|---|---|
| **CHOOSE TO REMAIN IN THE CLASS AND CLAIM YOUR SETTLEMENT CHECK BY RETURNING THE W-9 FORM** | **Return the enclosed W-9 form properly completed before the deadline and you will be mailed your settlement check** |
| **CHOOSE TO EXCLUDE YOURSELF FROM THE CLASS** | **Send in a request that you be excluded from the class. You will not receive your settlement check, but you will not be bound by the settlement and thus not released any legal claims against FedEx.** |
| **CHOOSE TO REMAIN IN THE CLASS AND OBJECT TO THE SETTLEMENT** | **Write to the Court explaining why you do not like the settlement** |
| **CHOOSE TO REMAIN IN THE CLASS BUT NOT RETURN THE ENCLOSED W-9 FORM** | **Do nothing. You will not receive your settlement check but you will be bound by the settlement and thus released any legal claims against FedEx** |

### Why did I get this notice?

You have been identified as a member of the class described above, and therefore you are eligible to receive a settlement check. This Notice is to inform you of your rights and what steps you may take to either seek your share of the settlement, opt out of the settlement, or object to the settlement. If after closely reading this notice you wish to participate in the settlement, there is nothing more you need to do to receive your share EXCEPT COMPLETE AND RETURN THE ENCLOSED W-9 FORM POSTMARKED ON OR BEFORE _____.

### What is this Lawsuit about?

Plaintiffs asserted various claims against FedEx based on an allegation that FedEx misclassified the plaintiffs and class members as independent contractors instead of as employees. The MDL Court granted class certification and also determined that plaintiffs and class members were employees under New Hampshire employment statutes. On remand, the U.S. District Court in New Hampshire held that the plaintiffs and class members are entitled to recover certain unlawfully withheld deductions, but that they are not entitled to recover other expenses that were not withheld from their settlement checks. After the Court rendered these holdings, the parties reached an agreement with the assistance of an outside mediator to settle the claims on a classwide basis.

### What does the Settlement provide?

FedEx has agreed to pay a lump sum for a full release of all claims. If the settlement receives final approval by the Court, after deducting the Court-approved costs, attorneys' fees and class representative awards, the remaining amount will be divided among all class members who do not exclude themselves from the class and who timely return their properly completed W-9 forms. It also provides that all class members who have not excluded themselves from the class shall be deemed to have released any and all claims they have or might have against FedEx on behalf of themselves and any business entities they control or controlled that contracted with FedEx.

### How much will be deducted from the lump sum for costs, attorneys' fees and class representative awards?

Class counsel will request the Court to approve the amount of up to one-third of the total settlement amount to compensate all of the attorneys who have litigated this case in the MDL and in New Hampshire District Court from the beginning of this case in 2005. Further, the amount set aside for incentive payments to the six class representatives who spent considerable time assisting in the preparation of this case is $25,000 each, and reimbursement is sought for out-of-pocket costs expended in this litigation totaling $167,000. All such amounts sought are subject to Court approval.

### How will the amount of my settlement check be computed?

After deducting the Court-approved costs, attorneys' fees and class representative awards, the remaining amount will be divided up among all class members who do not exclude themselves from the class and who timely return their properly completed W-9 forms by distributing settlement checks to them calculated as follows:

First, as to you and each other participating class member:

- Obtain the *actual* amount that plaintiffs claim were improperly deducted under New Hampshire law during 2005-09 (by totaling up the amounts shown on FedEx's internal records that were provided to class counsel)

- Obtain an *estimate* of the total amount improperly deducted during 2002-04 (because settlement data was not available for these years, an estimate is obtained by multiplying the average amount that plaintiffs claim were improperly deducted each week during 2005-09 by the number of weeks worked during 2002-04)

- Add up the actual amount from 2005-09 and the estimated amount from 2002-04.

Second:

- Add all class members' total deductions.

Third:

- Compute your percentage portion of the net recovery amount by dividing your share of the deductions by the total deductions of the whole class.

Fourth:

- Your settlement check amount equals your percentage portion of the net recovery amount multiplied by the net recovery amount.

The calculation is summarized on the attached exhibit.

### How do I claim my settlement check?

To participate in the class and claim your settlement check, you must fill out and send in the enclosed substitute W-9 Form (or any IRS-approved W-9 form, such as may be downloaded from the IRS website) to the Settlement Administrator at the address on the enclosed substitute W-9 form **postmarked no later than _____, 2014.** A postage-paid, addressed envelope is enclosed for your use. Any class members who do not fill out and mail in the Identification Form and W-9 Form before the _____ claims deadline are not eligible for any compensation.

### Will I owe any taxes?

You will receive an IRS Form 1099 for the amount you receive. You should consult with an accountant or other tax advisor about the tax consequences of your settlement proceeds.

### How do I request exclusion from the class?

If you do not wish to participate in this class action and proposed settlement, the Court will exclude you from the Class if you mail a written request for exclusion to the Settlement Administrator at the address included with the enclosed W-9 form, postmarked no later than _____, 2014, stating "Exclude me from the certified class in the Gennell v. FedEx Corp.," and including your name and address and the following case number: 1:05-CV-00145 (PB). If you exclude yourself, and the settlement receives final approval, you will lose your right to obtain any compensation under this settlement. However, you will retain the right to sue FedEx regarding the claims at issue in the lawsuit.

### What if I have objections to the settlement?

You can comment on or object to all or part of the proposed settlement by filing a written objection with the United States District Court for the District of New Hampshire, Chambers of the Honorable Judge Paul Barbadoro, US Courthouse, 55 Pleasant St., Concord, NH 03301, and mailing or delivering a copy of your objection to the respective parties' counsel as follows:

| Class counsel: | Defendants' counsel: |
|---|---|
| Jordan Lewis | James Rehnquist |
| Kelley Uustal | Goodwin Procter LLP |
| 700 S.E. Third Ave., Ste 300 | Exchange Place |
| Fort Lauderdale, FL 33316 | Boston, MA 02109 |

Any written objection must be postmarked no later than _____, 2014, and must include (1) the name of this lawsuit (listed above); (2) your full name and current address; (3) each specific reason for the objection; (4) all evidence and supporting papers (including, but not limited to, all briefs, written evidence, and declarations) that you want the Court to consider in support of the objection; (5) your signature; and (6) the date of your signature. Objectors may, but are not required to, appear at the final hearing. If you intend on appearing at the objection, you should so state in your objection.

### When is the hearing for final approval of the settlement?

The fairness hearing will be held in the United States District Court for the District of New Hampshire, US Courthouse, 55 Pleasant St., Concord, NH 03301, in Courtroom ___, on _____, 2014, at ____ A.M.. You do not need to attend the hearing nor hire your own attorney to attend the hearing, because as a class member you will be represented at the hearing by class counsel. However, if you wish to attend the hearing yourself, or to hire your own attorney, at your own expense you may do so. In this event, you or your attorney may appear at the hearing by notifying the Court in writing of your intent to appear, and sending or delivering a copy of your notification to the parties' counsel at the addresses indicated above.

3

| Who do I contact if I have further questions? |
|---|

You may obtain further information about the lawsuit and proposed settlement, or request a copy of the settlement agreement, by writing to class counsel Jordan Lewis at Kelley Uustal, 700 S.E. Third Avenue, Suite 300, Fort Lauderdale, FL 33316. Email: jml@kulaw.com; Phone: 952-522-6601.

**Substitute W-9**
**Taxpayer Identification Number Certification**

Enter your Social Security Number: __ __ __ - __ __ - __ __ __ __

Print name and address as shown on your income tax return:

First Name: _____          Last Name: _____

Address: _____

City: _____          State: _____   Zip Code: _____

Under penalties of perjury, I certify that:

1. The taxpayer identification number shown on this form is my correct taxpayer identification number, **and**
2. I am not subject to backup withholding because: (a) I am exempt from backup withholding, or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding, **and**
3. I am a U.S. person (including a U.S. resident alien).

Note: If you have been notified by the IRS that you are subject to backup withholding, you must cross out item 2 above.

Signature
of U.S. Person: _____          Date: _____

Please complete the above substitute W-9 form and return to:

> **[Settlement Administrator]**

A pre-addressed envelope is enclosed herewith for your convenience. Please note that your claim must be **postmarked no later than _____, 2014.**

5

Case 1:05-cv-00145-PB   Document 93-6   Filed 09/04/14   Page 1 of 2

# EXHIBIT 3

Case 1:05-cv-00145-PB   Document 93-6   Filed 09/04/14   Page 2 of 2

## EXHIBIT 3

### How your percentage share of the recovery is calculated

| Row | Description | Amount | |
|-----|-------------|--------|---|
| A | Actual amount plaintiffs claim improperly deducted 2005-08 | $_____ | |
| B | + Estimated total amount deducted 2002-04 | $_____ | |
| C | = Your Total Deductions | $_____ | |
| | | | |
| D | Sum of all Participating Class Members' Total Deductions = Classwide Total Deductions | $_____ | |
| | | | |
| E | Row C divided by Row D (= your percentage portion of the Net Recovery Amount) | ___% | |
| | | | |
| F | Your settlement check amount (= Row E divided by Net Recovery Amount) | $_____ | |

### How the net recovery is calculated

| DESCRIPTION | AMOUNT |
|-------------|--------|
| Total Settlement | $8,700,000 |
| Attorneys' Fees | $2,900,000 |
| Costs | $167,000 |
| Class Representative Service Payments | $150,000 |
| Total Net Payments to Class Members | $5,483,000 |
| Your Individual Recovery | $ |