UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

JEFFREY PADOVANO, THOMAS WERNDLE,
CHRIS ARBER, MICHAEL TUTTLE and ANDREW
MITRANO, on behalf of themselves and others
similarly situated,

                     Plaintiffs,

                                       Case # 16-CV-17-FPG

v.

                                       DECISION & ORDER

FEDEX GROUND PACKAGE SYSTEM, INC.,

                     Defendant.

## INTRODUCTION

In this putative class action, Plaintiffs allege that Defendant FedEx Ground Package System, Inc. ("FedEx Ground") misclassified them as independent contractors rather than employees and took illegal deductions from their pay while they performed package pick-up and delivery services for FedEx Ground in the State of New York.

Presently before the Court is a motion to dismiss filed by FedEx Ground pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. ECF No. 3. For the reasons stated below, that motion is denied.

## BACKGROUND

FedEx Ground operates a nationwide package delivery business through which it compensates thousands of licensed drivers to transport and deliver packages in New York and around the country. ECF No. 1, Ex. A ("Complaint") at ¶ 11. Plaintiffs, along with other similarly situated individuals they seek to represent, worked as drivers for FedEx Ground

pursuant to standardized Operating Agreements.[1]  Each Plaintiff drove a delivery truck with a gross vehicle weight rating ("GVWR") of over 10,001 pounds and drove full-time for FedEx Ground "during the relevant statute of limitations."  *Id.* at ¶¶ 21, 9.  The Operating Agreements state that each driver will perform delivery services "strictly as an independent contractor, and not as an employee of [FedEx Ground] for any purpose."  *See* Kernen Decl., Exs. 1, 5, 9, 13, 16.

Despite being classified as independent contractors under the Operating Agreements, Plaintiffs allege that they were still directed and controlled by FedEx Ground "not only as to the result to be accomplished by the work, but also as to the manner and means by which that result was accomplished."  Complaint at ¶ 15.  For example, Plaintiffs allege that each driver was supervised and managed by a FedEx Ground terminal manager or assistant terminal manager; that each driver was required to comply with detailed instructions regarding both written and unwritten policies, procedures, and directives promulgated by FedEx Ground; and that each driver went through training by FedEx Ground in order to comply with all of the relevant policies and procedures.  *Id.* at ¶ 16a-c.

Further, although Plaintiffs were required to purchase or lease the vehicles they used to make deliveries, FedEx Ground required that Plaintiffs use specific FedEx signage and logos on

---

[1]       Jeffrey Padovano entered into an Operating Agreement with FedEx Ground on November 9, 2009.  ECF No. 3-2 ("Kernen Decl."), Ex. 1.  On December 6, 2010, Jeffrey Padovano assigned the Operating Agreement to J M Padovano Corp.  Kernen Decl., Ex. 2.  Jeffrey Padovano executed the assignment agreement on behalf of himself and as president of J M Padovano Corp.  *Id.*
        Thomas Werndle entered into an Operating Agreement with FedEx Ground on October 30, 2007.  Kernen Decl., Ex. 5.  On October 1, 2010, Thomas Werndle, in his capacity as president of Werndle Delivery Service, Inc., signed a Contracted Entity Compliance Disclosure Compliance Certification in which he states that Werndle Delivery Service, Inc. has been incorporated since July 23, 2004.  Kernen Decl., Ex. 6.
        Chris Arber entered into an Operating Agreement with FedEx Ground on December 29, 2009.  Kernen Decl., Ex. 9.  On December 22, 2009, Chris Arber (as president of Arber Enterprises, Inc.) signed a Signature Page Amendment changing the identity of the term "Contractor" in the Operating Agreement from Chris Arber to Arber Enterprises, Inc.  Kernen Decl., Ex. 10.
        On February 11, 2013, Michael Tuttle signed an Operating Agreement with FedEx Ground on behalf of CLT Transport Corporation, of which he was president.  Kernen Decl., Ex. 13.
        Andrew Mitrano entered into an Operating Agreement with FedEx Ground on October 22, 2009.  Kernen Decl., Ex. 16.  On April 19, 2011, Andrew Mitrano assigned the Operating Agreement to AJM Deliveries, Inc.  Kernen Decl., Ex. 17.  Andrew Mitrano executed the assignment agreement on behalf of himself and as owner of AJM Deliveries, Inc.  *Id.*

their trucks.  *Id.* at ¶ 16d.  This prevented the drivers from using their vehicles to offer services to the general public.  *Id.*  Similarly, although FedEx did not provide Plaintiffs with uniforms to wear while making deliveries, FedEx Ground required Plaintiffs to use specific FedEx logos, which prevented the drivers from using their uniforms for other purposes.  *Id.*

Plaintiffs also allege that FedEx Ground determined the number of packages that each driver would deliver on FedEx Ground's behalf.  *Id.* at ¶ 16f.  Plaintiffs were required to coordinate vacations and days off with FedEx Ground station managers or assistant managers.  *Id.* at ¶ 16h.  Plaintiffs were also required to attend meetings with their respective FedEx Ground station manager or assistant manager.  *Id.* at ¶ 16i.

With respect to pricing, Plaintiffs allege that FedEx Ground set the price that it charges customers for pick-up and delivery of packages, meaning that Plaintiffs had no control over the amount they were paid for such packages.  *Id.* at ¶ 16e.  Instead, Plaintiffs were generally paid "on a job-rate basis whereby they receive for each delivery a fixed amount of money" from FedEx Ground.  *Id.* at ¶ 19.  Payments by FedEx Ground to Plaintiffs were reduced to account for expenses that did not benefit Plaintiffs or other FedEx Ground drivers.  *Id.* at ¶ 20.  For example, Plaintiffs allege that they were subjected to deductions to cover "use of a FedEx scanner, the cost of FedEx uniforms, liability and workers' compensation insurance, various performance-based penalties, and lease payments."  *Id.*

Plaintiffs allege that the work they did for FedEx Ground, namely the pick-up and delivery of packages, "constitutes the central purpose for which FedEx Ground exists."  *Id.* at ¶ 17.  Plaintiffs "do not have an independently established trade or business separate and distinct from that of [FedEx Ground]" and allege that they are "wholly dependent upon FedEx Ground for all of their business."  *Id.* at ¶ 18.

**LEGAL STANDARD**

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that a party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In reviewing a motion to dismiss under Rule 12(b)(6), a court "must accept as true all of the factual allegations contained in the complaint," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 572 (2007), and "draw all reasonable inferences in Plaintiff's favor." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Twombly,* 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The application of this standard is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

When deciding a motion under Rule 12(b)(6), a court ordinarily may not rely on matters outside the pleadings unless the court treats the motion as one for summary judgment under Rule 56 and gives the parties a reasonable opportunity to present relevant evidence. Fed. R. Civ. P. 12(d). However, as the Second Circuit explained in *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002):

> For purposes of this rule, "the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995) (per curiam) (quoting *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991)); *see* Fed. R. Civ. P. 10(c) ("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes."). Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint "relies heavily upon its terms and effect," which renders the document "integral" to the complaint. *Int'l Audiotext*, 62 F.3d at 72.

*Id.* at 152-53 (2d Cir. 2002).   With respect to documents that are deemed "integral" to the complaint, "it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document" and that "there exist no material disputed issues of fact regarding the relevance of the document." *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006).   Furthermore, "where plaintiff has actual notice of all the information in the movant's papers and has relied upon these documents in framing the complaint the necessity of translating a Rule 12(b)(6) motion into one under Rule 56 is largely dissipated." *Chambers*, 282 F.3d at 153 (quoting *Cortec*, 949 F.2d at 48) (internal quotations omitted).

Here, FedEx Ground attached to its motion to dismiss copies of the Operating Agreements executed by each of the named Plaintiffs and FedEx Ground, along with various addenda.   *See* Kernen Decl.   Plaintiffs refer to the Operating Agreements throughout their complaint.   *See* Complaint at ¶¶ 8, 9, 11, 12, 13, 14, 15, 22.   In response to FedEx Ground's motion to dismiss, Plaintiffs do not contest the authenticity of these documents and in fact refer to them in their brief.   ECF No. 11, at 13 n.5.   Therefore, the Court deems the documents provided by FedEx Ground to be incorporated by reference into Plaintiffs' complaint and will consider these documents in the context of the instant motion to dismiss.

## DISCUSSION

Plaintiffs seek reimbursement for the deductions and charges taken from their wages by FedEx Ground under three different theories of liability.   First, Plaintiffs assert that because they are employees as defined by the New York State Commercial Goods Transportation Industry Fair Play Act ("Fair Play Act"), N.Y. Lab. Law §§ 862, *et seq.*, the deductions from their pay violated section 193 of the New York Labor Law.   Complaint at ¶¶ 30-32.   Second, Plaintiffs assert that to the extent the Fair Play Act does not apply, they are still entitled to reimbursement because they qualify as employees under New York common law.   Complaint at ¶¶ 33-35.

Third, Plaintiffs invoke the common law doctrine of unjust enrichment and assert that "it is against equity and good conscience" to permit FedEx Ground to retain the money that was deducted from their wages.  Complaint at ¶¶ 36-40.

FedEx Ground, on the other hand, has moved to dismiss the complaint in its entirety. ECF No. 3.  FedEx Ground argues that Plaintiffs have not alleged sufficient facts to state a plausible claim under the Fair Play Act or New York common law, that the issue in this case should be whether Plaintiffs were jointly employed by FedEx Ground and the companies Plaintiffs owned, and that Plaintiffs' unjust enrichment claim must be dismissed because the relationship between Plaintiffs and FedEx Ground is governed by the Operating Agreements.  *Id.* These arguments are addressed in turn.

## I.    Fair Play Act

The Fair Play Act, which became effective in New York on April 10, 2014, creates a presumption that any person "performing commercial goods transportation services for a commercial goods transportation contractor" is an employee of that contractor, unless one of two exceptions applies.  N.Y. Lab. Law § 862-b.

The term "commercial goods transportation services" is defined as "the transportation of goods for compensation by a driver who possesses a state-issued driver's license, transports goods in the state of New York, and operates a commercial motor vehicle as defined in subdivision four-a of section two of the transportation law.[2]"  N.Y. Lab. Law § 862-a(3).

Similarly, the term "commercial goods transportation contractor" is defined as "any sole proprietor, partnership, firm, corporation, limited liability company, association or other legal entity that compensates a driver who possesses a state-issued driver's license, transports goods in the state of New York and operates a commercial motor vehicle as defined in subdivision four-a

---

[2]        Section 2.4-a of the New York Transportation Law provides that a vehicle with a GVWR of 10,001 pounds or more qualifies as a "commercial motor vehicle."  N.Y. Transp. Law § 2.4-a.

of section two of the transportation law."  N.Y. Lab. Law § 862-a(1).  The Fair Play Act also

makes it clear that the term "commercial goods transportation contractor" includes both general

contractors and subcontractors.  *See* N.Y. Lab. Law § 862-a(2).

FedEx Ground argues that it is not a "commercial goods transportation contractor" under

the Fair Play Act because pursuant to the Operating Agreements, FedEx Ground did not pay

Plaintiffs directly but rather paid "the companies they drove for."  ECF No. 3-22, at 10.  In other

words, because FedEx Ground paid J M Padovano Corp instead of Jeffrey Padovano himself,

FedEx Ground did not compensate Jeffrey Padovano and the Fair Play Act does not apply to

FedEx Ground.  *Id.* at 9-11.  This argument is belied by the fact that the term "commercial goods

transportation contractor" includes both general contractors and subcontractors, *see* N.Y. Lab.

Law § 862-a(2), and also by common sense.  If any business could avoid the Fair Play Act by

simply classifying their workers as independent contractors and compensating them through

corporations rather than paying them directly, the Fair Play Act would be rendered useless.

FedEx Ground also argues that Plaintiffs have failed to allege that they performed

delivery services after the Fair Play Act was enacted in 2014.  ECF No. 3-22, at 10.  Although

the statement in Plaintiffs' complaint that Plaintiffs delivered packages for FedEx Ground

"during the relevant statute of limitations" is overly vague, the documents that FedEx Ground

attached to its own motion to dismiss indicate that Plaintiffs did in fact work for FedEx Ground

after the effective date of the Fair Play Act.  *See* Kernen Decl., Exs. 3, 4, 7, 11, 12, 14, 15 (all

executed after April 10, 2014).  Therefore, this argument is unavailing.

## II.   New York Common Law

The terms "employee" and "employer" are included in the definitions section of the New

York Labor Law, but those definitions are tautological.  *See* N.Y. Lab. Law §§ 190(3) (defining

employee as "any person employed for hire by an employer in any employment"), 190(4)

(defining employer as "any person, corporation, limited liability company, or association employing any individual in any occupation, trade, business or service").  Therefore, New York courts apply a common law test focused on "the degree of control exercised by the purported employer over the results produced or the means used to achieve the results."  *Bynog v. Cipriani Grp., Inc.*, 1 N.Y.3d 193, 198 (2003); *see Matter of Ted Is Back Corp.*, 64 N.Y.2d 725, 726 (1984) (noting that "control over the means is the more important factor to be considered").

Determining whether a given worker is an employee under New York common law is a fact-intensive inquiry, and it does not depend on how the parties have labeled themselves.  *Hart v. Rick's Cabaret Int'l, Inc.*, 967 F. Supp. 2d 901, 924 (S.D.N.Y. 2013) ("[I]t is not significant how the parties defined the employment relationship or how the worker identified herself on tax forms.").  Factors relevant to this analysis include whether the worker (1) worked at his or her own convenience; (2) was free to engage in other employment; (3) received fringe benefits; (4) was on the employer's payroll; and (5) was on a fixed schedule.  *Bynog*, 1 N.Y.3d at 198.  However, these factors are not exhaustive.  *Suvill v. Bogopa Serv. Corp.*, No. 11-CV-3372, 2014 WL 4966029, at *10 (E.D.N.Y. Sept. 30, 2014).  Other relevant factors include whether the worker was required to wear a uniform, follow company procedures, attend meetings, sign in and out of work, and coordinate vacation with a supervisor, and whether the employer decided when each task should be started and on which task the worker should focus at any particular time.  *Id.* (internal citations omitted).

Here, Plaintiffs have plausibly alleged that they were employees under the New York common law test.  Specifically, Plaintiffs allege that they were supervised by, and required to coordinate vacations and days off with, FedEx Ground managers; that they were required to comply with detailed policies, procedures, and directives promulgated by FedEx Ground; that they were required to attend meetings with their FedEx Ground station manager or assistant

8

manager; that FedEx Ground required Plaintiffs to use specific FedEx signage and logos on their trucks and uniforms, which prevented Plaintiffs from using those trucks and uniforms to offer services to the general public; that FedEx Ground set the price which it charges customers for pick-up and delivery of packages; and that FedEx Ground determined the number of packages that each driver would deliver. At this stage of the litigation, these factual allegations are more than sufficient to state a plausible claim for relief.

FedEx Ground argues that Plaintiffs' complaint is conclusory and that to the extent Plaintiffs have made factual allegations, those allegations relate to FedEx Ground's control over the *results* produced by FedEx Ground drivers, not the *means* used to achieve those results. ECF No. 3-22, at 7-9. But this argument mischaracterizes both Plaintiffs' complaint and the relevant legal standard. As detailed above, Plaintiffs have made specific factual allegations regarding the extent to which FedEx Ground exerted control over Plaintiffs and other drivers. *See* Complaint at ¶ 16a-i. With respect to FedEx Ground's control over the means by which Plaintiffs delivered packages, Plaintiffs allege that FedEx Ground required them to wear specific uniforms, drive a vehicle with specific FedEx logos, follow specific policies and procedures promulgated by FedEx Ground, undergo training to comply with those policies and procedures, and be supervised by a FedEx Ground manager. *Id.* Further, although control over the results produced is less important under the New York common law test than control over the means used to produce those results, that does not mean that control over the results is irrelevant. *See Matter of Ted Is Back Corp.*, 64 N.Y.2d at 726 (stating that "*incidental* control over the results produced *without further indicia of control over the means employed* to achieve the results will not constitute substantial evidence of an employer-employee relationship") (emphasis added).

Because Plaintiffs have plausibly alleged that they were employees under the New York common law test, FedEx Ground's motion to dismiss that claim is denied.

### III.    Joint Employment

Next, FedEx Ground argues that the issue in this case should not be whether Plaintiffs were employed by FedEx Ground directly, but whether they were *jointly employed* by FedEx Ground and the companies they owned.  ECF No. 3-22, at 12-14.  But the fact that Plaintiffs formed corporations and signed the Operating Agreements on behalf of those corporations does not render the Fair Play Act or New York common law definitions of employment irrelevant.  As explained above, the Fair Play Act definition of "commercial goods transportation contractor" includes both general contractors and subcontractors.  *See* N.Y. Lab. Law § 862-a(2).  And under the New York common law test, "it is not significant how the parties defined the employment relationship."  *Hart*, 967 F. Supp. 2d at 924.  Therefore, this argument is unavailing.

### IV.    Unjust Enrichment

Lastly, FedEx Ground argues that Plaintiffs' unjust enrichment claim must be dismissed because the relationship between Plaintiffs and FedEx Ground is governed by the Operating Agreements.  ECF No. 3-22, at 15.  Although FedEx Ground is correct that unjust enrichment is a quasi-contractual claim that applies in the absence of a contract between the parties, *Clark-Fitzpatrick, Inc. v. Long Island R. Co.*, 70 N.Y.2d 382, 388 (1987), it would be improper for the Court to decide at this stage of the litigation that the relationship between Plaintiffs and FedEx Ground is "governed by the Operating Agreement."  *See Seiden Assocs., Inc. v. ANC Holdings, Inc.*, 754 F. Supp. 37, 39 (S.D.N.Y. 1991).  Under New York law, a worker can state a claim for unjust enrichment even if the existence of a contract might ultimately preclude recovery on that claim.  *Id.*; *see also Denhaese v. Buffalo Spine Surgery, PLLC*, --- A.D.3d ----, No. 15-02171, 2016 WL 6642157, at *1 (4th Dep't Nov. 10, 2016) (affirming the denial of employer's motion for summary judgment as to employee's unjust enrichment claim because "there are questions of fact whether a valid agreement exists"); Fed. R. Civ. P. 8(d) (allowing parties to plead in the

alternative and state inconsistent claims or defenses).   Therefore, FedEx Ground's motion to dismiss Plaintiffs' unjust enrichment claim is denied.

## CONCLUSION

For the reasons stated above, FedEx Ground's motion to dismiss (ECF No. 3) is DENIED.

IT IS SO ORDERED.

Dated:  December 5, 2016
        Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court