UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| JEFFREY PADOVANO, CHRIS ARBER, MICHAEL TUTTLE, and ANDREW MITRANO, on behalf of themselves and others similarly situated,<br><div align="right">Plaintiffs,</div><div align="center">v.</div>FEDEX GROUND PACKAGE SYSTEM, INC.,<br><div align="right">Defendant.</div> | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | Civil Action No.<br>1:16-cv-00017 (FPG) |

## CLASS ACTION SETTLEMENT AGREEMENT

This Agreement shall constitute the full Class Action Settlement Agreement ("Settlement Agreement" or "Agreement") between Jeffrey Padovano, Chris Arber, Michael Tuttle, and Andrew Mitrano  (the "Plaintiffs"), on behalf of themselves and the Settlement Class, as defined below, and Defendant FedEx Ground Package System, Inc. (" FXG"), collectively, the "Parties," to settle, fully and finally, all of the Released Claims (as defined below).

A.     Certain disputes and differences have arisen between the Parties concerning FXG's alleged classification of package delivery drivers as independent contractors instead of employees. Plaintiffs allege that based upon this employment classification, they and the members of the Settlement Class were, among other things, unlawfully deprived of the benefits of various employment laws, were not paid all wages due, and bore expenses that should have been borne by FXG.

B.     *Padovano, et al. v. FedEx Ground Package System, Inc.*, No. 1:16-cv-00017 (the "Lawsuit"), is currently pending in federal district court for the Western District of New York. The operative Class Action Complaint was filed on December 7, 2015 in the Supreme Court of New York (the "Operative Complaint"), and the action was then removed to this Court on January 5, 2016. Plaintiffs brought three claims for relief against FXG: (1) New York Labor Law § 193, *et seq.*; (2) common law misclassification; and (3) unjust enrichment.  FXG denies all of the allegations asserted in the Lawsuit and denies that it has committed any violation of law, misconduct, wrongdoing, or any other actionable conduct, and also denies that it has misclassified the Plaintiffs or the members of the Settlement Class.

C.     On January 12, 2016, FXG filed a motion to dismiss the Operative Complaint, which was denied by an Order dated December 5, 2016.

D.     The Parties attended non-binding mediation with Michael Dickstein, Esq. on May 17, 2017.  The matter was not resolved at this mediation.

E.     The Parties conducted discovery related to issues of class certification and Plaintiffs filed a motion for class certification on August 15, 2017.  Defendants opposed.

F.     While the class certification motion was pending, the Parties attended a half-day mediation session with Michael Dickstein, Esq. via telephone conference on February 20, 2019. The Parties continued their settlement discussions through Attorney Dickstein after that mediation session, and entered into a proposed class action settlement shortly thereafter.

G.     This Agreement is made in consideration of the facts and recitals set forth herein. The Parties understand, acknowledge, and agree that this Agreement constitutes a compromise of all the disputed claims at issue in the Lawsuit and that it is the desire and intention of each of the Parties to effect a final and complete resolution of the Lawsuit and of the Released Claims of the Named Plaintiffs individually and of the Settlement Class, including all costs and attorneys' fees incurred.

H.     Plaintiffs and Class Counsel: (1) have examined and considered the benefits to be provided to Class Members under the settlement provided for in this Agreement (the "Settlement," as defined below); (2) have considered the applicable law and the claims that have been and could have been asserted in the Class Action Complaint arising out of or relating to the allegations of misclassification of the members of the Settlement Class as independent contractors; and (3) believe the Settlement to be fair, reasonable, and adequate, and in the best interest of the Settlement Class, taking into account the benefits provided to the members of the Settlement Class through the terms of the Settlement Agreement, the decisions rendered in the Lawsuit, the risks of litigation, and the length of time that would be required to complete the litigation and any appeals.

I.     The Parties further acknowledge that this Settlement is a compromise of disputed claims and that FXG is not in any way admitting liability by entering into this Agreement. FXG has at all times disputed, and continues to dispute, the allegations in the Lawsuit and denies any liability for any of the claims that have or could have been raised in the Lawsuit regarding the classification of the Plaintiffs and the members of the Settlement Class as independent contractors, but believes that the Settlement as provided in this Agreement will avoid the substantial expense and disruption of continued litigation.

J.     The Parties believe that the Settlement is fair, reasonable, and adequate. The Settlement was arrived at through arm's-length negotiations, taking into account all relevant factors, and will materially benefit the members of the Settlement Class. The Parties recognize the uncertainty, risk, expense, and delay attendant to continuing the Lawsuit through discovery and trial, and any further appeals following trial. Accordingly, the Parties desire to fully, finally, and forever settle, compromise, and discharge all disputes and claims arising from or relating to the Lawsuit.

Therefore, in consideration of the promises and agreements contained herein, and intending

to be legally bound, the Parties agree and covenant as follows:

## I.      DEFINITIONS

As used in this Agreement, the following definitions (in addition to those set forth elsewhere herein) shall apply:

A.      "Claiming Class Members" means all those individuals and entities included in the Settlement Class (defined herein) who timely submit both a Claim Form to receive funds under the terms of this Agreement and a fully completed and executed Form W-9.

B.      "Claim Form" means the Form attached hereto as Exhibit 2, and must be submitted by any member of the Settlement Class in order to receive payment under the terms of this Agreement.

C.      "Class" or "Settlement Class," means: All persons who: 1) entered into a FedEx Ground or FedEx Home Delivery Form Operating Agreement ("Operating Agreement") after October 15, 2007 and before September 3, 2016  to provide package pick-up and delivery services pursuant to the Operating Agreement; and 2) were dispatched out of a terminal in the State of New York.

The Settlement Class also includes any person who met the class definition in the FXG multidistrict litigation action, *Louzau v. FedEx Ground Package System, Inc*., Case No. 05-538, United States District Court for the Northern District of Indiana (the "*Louzau* MDL Action"), but who 1) excluded him or herself from that class; and/or 2) continued to provide package pick-up and delivery services under an Operating Agreement after the end of the Release Period as defined in the settlement of the *Louzau* MDL Action.

The Settlement Class specifically excludes those individuals defined as "Deductions Beneficiaries" in the NYAG Settlement who execute a release of deductions claims as part of that settlement by submitting a claim form.

The Settlement Class specifically excludes claims arising from the provision of package pick-up and delivery services exclusively under an Independent Service Provider ("ISP") agreement.

For the purposes of this definition, and with regard to the terms of this Settlement Agreement, "persons" shall be defined to include both individuals who contracted in their own name and individuals who were the authorized officer or owner of any business entity (whether partnership, limited liability company, sole proprietorship, corporation, or other business structure) who were signatories to an Operating Agreement with FXG during the specified time period. It shall also include business entities (of whatever type and whenever formed) which entered into, or assumed an assignment of, an FXG Operating Agreement where the authorized officer or owner of the business entity is or was a Named Plaintiff or Settlement Class Member.

D.      "Class Counsel" means Sam Alba of Friedman & Ranzenhofer, P.C., Harold Lichten of Lichten & Liss-Riordan, P.C., and Pete Winebrake of Winebrake & Santillo, LLC.

E.      "Class Member" or "Settlement Class Member" means, individually or collectively depending on whether the singular or plural is used, any individual or business entity meeting the qualifications set forth in Section I.C. above, and/or any individual or business entity who was a signatory to an FXG Operating Agreement during the Class Period whom the Parties otherwise agree shall be considered a member of the Class. A preliminary list of Class Members in the Lawsuit is attached to this Agreement as **Exhibit 3**. Notwithstanding the list attached to the Agreement, nothing shall prevent the Parties, through their counsel, from mutually agreeing to subsequently modify the list of Class Members to correct errors or omissions therein.

F.      "Class Period" refers to the time period from December 7, 2009 through September 3, 2016.

G.      "Class Settlement Fund" means the fund that will be established and maintained to resolve the claims at issue, as described in Section III.A. below, and which is intended to be a qualified settlement fund within the meaning of Internal Revenue Code § 468B and Treasury Regulation § 1.468B-1.

H.      "Effective Date" means the first business day after the following has occurred: (i) 35 days have elapsed from the entry by the Court of the Final Approval Order in the Lawsuit and the judgment thereon, and no notice of appeal of the judgment or any Order in the Lawsuit has been filed, the time provided  to take any such appeal has expired, and any right to take any such appeal from the judgment or from any such Order has been waived or otherwise lost; or (ii) if an appeal has been taken, 35 days have elapsed since each such appeal has been finally adjudicated and the Final Approval Order and judgment have been upheld in all respects by each such final adjudication, and either the time for initiation of the next step in the appellate process (e.g., a petition for writ of certiorari) has expired without any action by appellant(s) or the next step in the appellate process was invoked and has been concluded without any impact on the Final Approval Order or judgment.

I.      "Exclusion Request" means a request to opt out of the Settlement Class by Settlement Class Members pursuant to Sections IV and VIII of this Agreement.

J.      "Fairness Hearing" means the final approval hearing, to be held after notice has been provided to the Class Members in accordance with Section II.C of this Agreement, to determine whether the Settlement should obtain final approval.

K.      "Final Approval Order" means the order to be entered in the Lawsuit granting final approval to the Settlement, attached hereto as Exhibit 5.

L.      "First Round Distribution" means the initial distribution of funds to Claiming Class Members..

M.     "Form W-9" means the current version of the Internal Revenue Service's Form W-9 (Request for Taxpayer Identification Number and Certification).

N.     "Named Plaintiffs" means Jeffrey Padovano, Chris Arber, Michael Tuttle, and Andrew Mitrano.

O.     "Named Plaintiffs' Released Claims" means, with respect to the Named Plaintiffs in their individual, as opposed to representative, capacity, any and all claims, actions, causes of action, administrative claims, demands, charges, debts, damages, penalties, interest, costs, attorneys' fees, obligations, judgments, expenses, or liabilities, in law or in equity, whether now known or unknown, contingent or absolute, that a Plaintiff, on behalf of himself or herself and on behalf of any related or associated business entities (including any entity for or through which Plaintiff has provided pickup and delivery services to FXG), had, has or could have had against the Releasees by reason of any act, omission, harm, matter, cause, or event whatsoever, whether sounding in tort, contract, federal, state and/or local law, statute, ordinance, regulation, common law, or other source of law or contract, arising at any time in the Release Period, for any type of relief, including without limitation wages, pay, unpaid/unreimbursed costs, deductions, penalties, general damages, compensatory damages, liquidated damages, punitive damages, interest, attorneys' fees, litigation and other costs, expenses, restitution, and equitable and declaratory relief.  The Named Plaintiffs' Released Claims are further defined under "Released Claims" below.

P.     "NYAG Settlement" means the settlement reached in <u>People of the State of New York v. FedEx Ground Package System, Inc.</u>, Supreme Court of New York, County of New York Index No. 402960/10.

Q.     "Preliminary Approval Order" means the order to be entered in the Lawsuit granting preliminary approval to the Settlement, attached hereto as Exhibit 4.

R.     "Releasees" means: (a) FXG, and its consolidated subsidiaries, successors, predecessors, assigns, affiliates, parent companies, shareholders, officers, directors, agents, insurers, attorneys, and employees; and (b) FXG's past, present, and future shareholders, officers, directors, agents, employees, attorneys, and insurers.

S.     "Release Period" refers to the time period from December 7, 2009 through the date of the Court's preliminary approval order.

T.     "Released Claims" means all claims released pursuant to this Agreement, including without limitation the Named Plaintiffs' Released Claims and the Settlement Class Member Released Claims.  The Released Claims include any known or unknown claims for damages or injunctive relief relating to claims described herein. Specifically Plaintiffs and all Class Members in exchange for the valuable consideration offered herein, on their own behalf, and on behalf of any corporation, limited liability company, sole proprietorship, and any other business entity with which they have an ownership interest.

U.      "Second Round Distribution" means a second payment of settlement funds to all Claimant Class Members, including those who are "Deductions Beneficiaries" in the NYAG Settlement but who do not submit a claim form to receive funds from the NYAG Settlement.

V.      "Service Award(s)" shall have the meaning set forth in Paragraph VII.B of this Agreement.

W.      "Settlement" means collectively the rights and duties of the Parties under this Agreement and the processes for approval and payment to Class Members described in this Agreement.

X.      "Settlement Administrator" means Rust Consulting, which the parties designate as the qualified firm to be approved by the Court to administer the Settlement and the Class Settlement Fund as described in Sections III.E and III.G of this Agreement.

Y.      "Settlement Class Member Released Claims," as to Named Plaintiffs and all Settlement Class Members in this Lawsuit who do not submit a valid Exclusion Request, means all claims, actions, causes of action, administrative claims, demands, debts, damages, penalties, costs, interest, attorneys' fees, obligations, judgments, expenses, or liabilities, in law or in equity, whether now known or unknown, contingent or absolute, which: (i) are owned or held by Named Plaintiffs and Class Members and/or by their affiliated business entities (if any), or any of them, as against Releasees, or any of them; (ii) arise under any statutory or common law claim which was asserted in the Lawsuit or, whether or not asserted, could have been brought arising out of or related to the allegations of misclassification of Named Plaintiffs and Class Members as independent contractors set forth in the Operative Complaint, and (iii) pertain to any time in the Release Period. The Released Claims include any known or unknown claims for damages and injunctive relief. The Released Claims include but are not limited to claims under New York Labor Law § 193; the Declaratory Judgment Act, 28 U.S.C. § 2201; and common law claims for fraud, breach of contract, rescission, unjust enrichment, or declaratory judgment. Notwithstanding the foregoing, the Released Claims specifically exclude claims arising under the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 et seq.  The Settlement Class Member Released Claims are further defined under "Released Claims" above.

Z.      "Initial Settlement Notice" means the proposed written notice attached hereto as **Exhibit 1**, to be approved by the Court and mailed to Class Members (except for those who are designated as "Deductions Beneficiaries" in the NYAG Settlement), in accordance with Section IV of this Agreement.

AA.     "Supplemental Settlement Notice" means the proposed written notice attached hereto as Exhibit 7, to be approved by the Court and mailed to "Deductions Beneficiaries," as defined in the NYAG Settlement, who do not participate and receive funds from that settlement in accordance with Section IV of this Agreement.

BB.    "Settlement Payment" means the amount set forth in Section III.A. of this Agreement that FXG will transfer to the Class Settlement Fund to resolve the Released Claims.


## II.    REQUIRED EVENTS

The events set forth in this Section II, in addition to the occurrence of the "Effective Date" as described in Section I.H, are conditions precedent to this Agreement becoming effective.

A.    As soon as practicable after the execution of the Agreement by the Plaintiffs and FXG, the Plaintiffs shall file the Agreement with the Court and move for an Order granting Preliminary Approval of the Class Action Settlement and for certification of the Class for settlement purposes only, substantially in the form of **Exhibit 4** hereto.  The Preliminary Approval Order shall by its terms accomplish all of the following:

1.    Preliminarily approve this Settlement as fair, reasonable, and adequate to the Class Members.

2.    Approve Class Counsel to perform the Settlement administration duties set forth in Section III.D below.

3.    Designate Rust Consulting as the Settlement Administrator and approve it to perform the Settlement administration duties set forth in Section III.E below.

4.    Approve reasonable compensation and costs to the Settlement Administrator in accordance with the terms of Exhibit 6.

5.    Approve the "§ 1.468B-3 Statement" for the Class Settlement Fund that FXG will provide to the Settlement Administrator by February 15 of the year following the calendar year in which FXG transfers the Settlement Payment to the Class Settlement Fund.

6.    Approve the form, contents and methods of notices to be given to the Class Members as set forth in Section IV below.

7.    Establish procedures and deadlines for Class Members to return Claim Forms and Form W-9's, to object to the Settlement, to submit an Exclusion Request, and/or to challenge the Payment Calculations, all consistent with the terms of this Agreement.

8.    Schedule deadlines for the filing of objections to the Settlement and the filing of papers in support of final approval of the Settlement.

9.    Schedule the Fairness Hearing.

B.      Within fourteen days following the deadline set by the Court for Class Members to submit an Exclusion Request, Class Counsel shall provide to FXG a list of Class Members who timely submitted an Exclusion Request.

C.      At the Fairness Hearing, the Plaintiff will request the Court to enter the Final Approval Order for the Lawsuit, substantially in the form of **Exhibit 5** hereto, which: (1) grants final approval of the Settlement and this Agreement as fair, reasonable, and adequate to the Class Members; (2) provides for the release of all Released Claims and enjoins any and all Class Members from asserting, filing, maintaining, or prosecuting any of the Released Claims in the future; (3) orders the dismissal with prejudice of all Released Claims, and incorporates the releases and covenant not to sue stated in this Agreement, with each of the Parties to bear its, his, or her own costs and attorneys' fees (except as provided in Sections VII.A and VII.E of this Agreement); (4) authorizes the Settlement Administrator to issue settlement awards to Class Members in accordance with the terms of this Agreement; (5) authorizes the payment of the Service Awards to the Named Plaintiffs as detailed in Section VII.B of this Agreement; and (6) retains the Court's jurisdiction over the administration of the Settlement and enforcement of this Agreement.

D.      The Settlement Administrator will sign a written acknowledgement and acceptance of its duties in the form of Exhibit 6 hereto.

Named Plaintiffs, Class Counsel, and FXG will cooperate and take all reasonable actions to accomplish the above. If the Court fails to grant Preliminary Approval of the Settlement or the Final Approval Order in the form submitted by the Parties, Plaintiffs, Class Counsel, and FXG will use all reasonable efforts that are consistent with this Agreement to cure any defect identified by the Court. If, despite such efforts, the Court does not enter an Order granting Preliminary Approval and/or Final Approval of the Settlement, the Parties will return to their prior positions in the Lawsuit in accordance with Sections XII.A. of this Agreement.

## III.   PAYMENT TO CLASS SETTLEMENT FUND AND PROCEDURES FOR PROVIDING PAYMENTS TO CLASS MEMBERS

### A.     Payment to Class Settlement Fund

The Settlement Payment that FXG will transfer to the Class Settlement Fund for this Lawsuit is $3,100,000.00 (the "Settlement Payment"). No later than fifteen business days after the Effective Date, and in accordance with the other terms of this Agreement and its exhibits, FXG shall transfer the Settlement Payment to the Class Settlement Fund to resolve the Released Claims of Named Plaintiff and Class Members for this Lawsuit.

The Parties intend the Class Settlement Fund to be a "qualified settlement fund" under Internal Revenue Code § 468B and Treasury Regulation § 1.468B-1. Accordingly, FXG shall retain no rights or reversionary interests in the Settlement Payment once transferred to the Class Settlement Fund. Furthermore, FXG's obligation to make the Settlement Payment is contingent on (i) the Court's entry of the Preliminary Approval Order appointing the Settlement Administrator and approving the Settlement Administrator to establish and maintain the Class Settlement Fund for the Lawsuit; and (ii) the court's entry of the Final Approval Order releasing and dismissing with prejudice all of the Released Claims. Under no circumstances shall FXG be required to pay

more under this Settlement than the amount of the Settlement Payment as set forth herein. The Class Settlement Fund is a common fund that includes respective Class Counsel's fees and costs as described more fully in Sections V and VII. of this Agreement as well as the service award payments to Named Plaintiffs as described more fully in Section VII.B of this Agreement.

### B.        Payment Calculations for Class Members

1. Class Counsel shall make and submit to the Settlement Administrator and FXG their final Payment Calculations for the First Round Distribution no later than thirty (30) days after entry by the Court of the Final Approval Order. The Payment Calculations shall take into account available information regarding the length of time each claimant provided services under contract to FXG during the Release Period, and the amount of each claimant's *pro rata* share of the attorneys' fees and costs to be paid to Class Counsel. For members of the class in the *Louzau* MDL Action who are also Class Members under this Agreement, the Payment Calculations will exclude time periods for which such Class Members' claims were released in the settlement of the *Louzau* MDL Action.  Class counsel shall use a workweeks formula for workweeks in which Claiming Class Members drove a vehicle on a full-time basis to provide package pick-up and delivery services pursuant to the Operating Agreement, and shall allocate a lower amount for other workweeks. The minimum payment to each Claiming Class Member is $250. Class Counsel assume and accept all responsibility and liability associated with their Payment Calculations.  The "First Round Distribution" shall pay Claiming Class Members who are not Deductions Beneficiaries in the NYAG Settlement their Settlement Award assuming full participation of all Settlement Class Members in the settlement.

2. Because the First Round Distribution shall assume full participation, a  reserve amount will automatically be held back from the First Round Distribution to account for those Class Members defined as "Deductions Beneficiaries" in the NYAG settlement who do not submit a claim form to participate in the NYAG settlement, but who submit a timely Claim Form to participate in this Settlement.  The  reserve shall also account for the possibility that one or more late claims may be accepted after the date of the First Round Distribution.

3. If any Claiming Class Member does not collect his or her settlement award by cashing the settlement award check sent to him or her by the Settlement Administrator within 90 days after the date the check is issued, and does not request reissuance of the settlement award pursuant to subsection 4 below, then the amount of the Class Settlement Fund allocable to that Claiming Class Member shall be included with the reserve fund for the Second Round Distribution.

4. Within 90 days after the First Round Distribution, there shall be a Second Round Distribution of the all funds remaining in the Class Settlement Fund, comprised of the  reserve and any funds remaining from uncashed checks from the First Round Distribution. Claiming Class Members who were "Deductions Beneficiaries" in the NYAG Settlement, and therefore did not receive funds in the First Round Distribution, shall receive their full Settlement Award under the formula set forth in Section III.B.1 above.  After accounting for the full Settlement Awards to eligible "Deductions Beneficiaries," all remaining funds for purposes of the Second Round Distribution shall be distributed to all Claiming Class Members (excluding those who failed to cash their check from the First Round Distribution) based on each Claiming Class Member's proportionate share of the remaining Second Round Distribution Funds.  Although Claiming Class

Members who do not cash the settlement checks sent to them within 90 days will not receive a settlement award under this Agreement, they shall still be bound by the other provisions of this Agreement, including without limitation the release of claims provided in this Agreement.

5. If a Claiming Class Member informs Class Counsel or the Settlement Administrator within 60 days of either the first or second round distribution that his or her settlement award check was misplaced, lost in the mail, or otherwise could not be cashed, the Settlement Administrator shall cancel the check containing the settlement award and re-issue the settlement award to the Claiming Class Member, and said Claiming Class Members funds shall not be subject to the redistribution described elsewhere in this Agreement.

C.      *Cy Pres*

Upon occurrence of the Effective Date, the Settlement Administrator shall distribute settlement awards in accordance with Section III of the Agreement. To the extent checks from the Second Round Distribution are not cashed within ninety (90) days following the second distribution, these funds shall split evenly between the cy pres beneficiaries, Legal Assistance of Western New York and Legal Aid Bureau of Buffalo.

**D. Class Counsel's Settlement Administration Duties**

Class Counsel shall be solely responsible for the following functions in accordance with the terms of this Agreement, and with the Preliminary Approval Order and Final Approval Order in the Lawsuit:

1.      Mailing, by first-class United States Mail, the Settlement Notice (with the Fairness Hearing date and deadlines established by the Court in the Preliminary Approval Order), Claim Form, and a blank Form W-9 to all Class Members who can be identified through a reasonable effort.  Plaintiffs shall obtain the Settlement Administrator's approval of the Form W-9 prior to mailing.

2.      Mailing any reminder notices and making any follow-up telephone calls to Settlement Class Members that may be necessary as part of the Settlement Notice process as described in Section IV below.

3.      Providing to FXG a list identifying all Claiming Class Members.

4.      Providing to FXG a list identifying all Settlement Class Members who submitted a valid Exclusion Request.

5.      Providing FXG a list identifying all Settlement Class Members who submit an Objection pursuant to Section IV of this Agreement and copies of all papers received by any such objectors.

6.      Processing objections to the Settlement, including challenges to the Payment Calculations.

10

7.      Submitting the Named Plaintiffs' and Claiming Class Members' executed Form W-9's to the Settlement Administrator.

8.      Submitting Payment Calculations to the Settlement Administrator and FXG.


### E. Settlement Administrator's Duties

The Settlement Administrator shall be solely responsible for the following functions in accordance with the terms of this Agreement, and with the Preliminary Approval Order and Final Approval Order in the Lawsuit:

1.      Submitting the Named Plaintiffs' and Claiming Class Members' taxpayer identification numbers, as provided in the executed Form W-9's, to the Internal Revenue Service taxpayer identification number matching service, and obtaining (prior to issuing payment) a corrected Form W-9 from each Named Plaintiff and/or Claiming Class Member whose taxpayer identification number does not result in a match in the above-referenced IRS process.

2.      Mailing, by first-class United States Mail, settlement awards to Named Plaintiff and Claiming Class Members in accordance with the Payment Calculations for each such Class Member provided to the Settlement Administrator by Class Counsel.

3.      Mailing, by first-class United States Mail, payment(s) for attorneys' fees and costs to Class Counsel.

4.      Mailing, by first-class United States Mail, incentive awards to Named Plaintiffs.

5.      Mailing payments of unclaimed settlement funds to the designated *cy pres* beneficiaries, if any.

6.      Establishing, designating, and maintaining the Class Settlement Fund as a "qualified settlement fund" under Internal Revenue Code § 468B and Treasury Regulation § 1.468B-1, for the purpose of resolving the contested claims of Named Plaintiff and Class Members.

7.      Maintaining the assets of the Class Settlement Fund in a non-interest-bearing escrow account segregated from the assets of FXG and any person related to FXG.

8.      Obtaining an employer identification number (EIN) for the Class Settlement Fund pursuant to Treasury Regulation § 1.468B-2(k)(4).

9.      Preparing and filing federal income tax returns in the name of the Class Settlement Fund, as well as any other tax filings the Class Settlement Fund must make under federal, state, or local law.

10. Cooperating with FXG to jointly file a relation-back election under Treasury Regulation § 1.468B-1(j)(2), if necessary, to treat the Class Settlement Fund as coming into existence as of the earliest possible date.

11. Paying and depositing the federal taxes owed by the Class Settlement Fund under Treasury Regulation § 1.468B-2, as well as any state or local taxes owed by the Class Settlement Fund.

12. Preparing, filing, and issuing all necessary tax reporting forms in the name of the Class Settlement Fund, including IRS Forms 1099 regarding the distribution of payments to Class Members, Class Counsel, and Named Plaintiff.

13. Providing FXG with copies of all tax reporting and filings made for the Class Settlement Fund, including copies of the checks and IRS Forms 1099 issued to Class Members, Class Counsel, and Named Plaintiffs, and any other documentation to show that the tax reporting and filings were timely transmitted to the claimants and the applicable taxing authorities.

14. Paying any additional tax liabilities (including penalties and interest) that arise from the establishment and administration of the Class Settlement Fund. Any such tax payment shall be made solely from the assets of that Class Settlement Fund without any recourse against FXG for additional monies.

15. Providing the Final Accounting to FXG and Class Counsel.

16. Liquidating any remaining assets of the Class Settlement Fund after all payments to the Class Members, Class Counsel, and Named Plaintiffs have been made and all tax obligations have been satisfied, and distributing such assets as directed by the Court.

17. Petitioning the Court for termination of the Class Settlement Fund once all of the duties listed above in subsections (1) to (14) have been completed.

## F.     Payments to Named Plaintiffs and Class Members

Upon occurrence of the Effective Date, the Settlement Administrator shall, as soon as thereafter reasonably practicable, but within no more than 20 additional business days, mail, by first-class United States Mail, to Named Plaintiffs and Class Members checks in the amounts determined by Class Counsel pursuant to Section III.B. of this Agreement and drawn on the account of the Class Settlement Fund. To the extent checks are not cashed within ninety days, the remaining funds shall be distributed to Named Plaintiffs and Class Members who cashed their settlement checks within the 90-day period in *pro rata* shares, as described in Section III.B. above in a second-round distribution. To the extent checks issued in the second-round distribution are not cashed within ninety days, amounts remaining in the Class Settlement Fund shall be deposited with the *cy pres* recipient specified in Section III.C. of this Agreement.

Nothing in this paragraph shall prohibit the Settlement Administrator from cancelling and/or re-issuing a settlement award check to a Claiming Class Member whose settlement award check is lost in the mail or is otherwise unable to be cashed.

### G.     Settlement Administrator's Acceptance of Duties and Compensation

The Settlement Administrator will sign an agreement acknowledging its responsibilities under this Agreement and setting forth the price of its services.  If FXG or Class Counsel reasonably believes or suspects that the Settlement Administrator is failing to perform its duties, FXG or Class Counsel shall have a right to petition the Court for a remedy.

## IV.   SETTLEMENT NOTICE

The proposed settlement notices are attached hereto as Exhibits 1 and 7.  The parties agree that the settlement notices provide information sufficient to inform the Settlement Class Members of the material terms of this Settlement, the appropriate means for obtaining additional information regarding this Agreement and the Lawsuit, the appropriate means for and information about obtaining a settlement award pursuant to the Settlement, and the appropriate means to exclude oneself from the Settlement Class or to object to the Settlement. To facilitate the efficient administration of this Settlement, and to facilitate the making of settlement awards to Class Members under the Settlement, Class Counsel will provide all Settlement Class Members with copies of the Settlement Notice pertaining to the Lawsuit, as well as contact information for the appropriate Class Counsel in the event they have questions. Plaintiffs will request the Court to approve the Settlement Notice and Forms in the Preliminary Approval Order.

As soon as practicable, but no later than 20 days after the Court's entry of the Preliminary Approval Order unless otherwise ordered by the Court, Class Counsel shall send or cause to be sent, by first-class United States Mail, a copy of the Initial Settlement Notice, Claim Form, and Form W-9 to every Class Member who can be identified through reasonable effort. Before the mailing of these documents, Lichten & Liss-Riordan, P.C. will obtain or cause to be obtained address updates utilizing a national change of address database.

Within 30 days after the initial mailing of the Settlement Notice, Claim Form, and Form W-9, Class Counsel shall distribute a "reminder notice" to all Settlement Class Members who have not yet submitted a Claim Form or otherwise responded to the Settlement Notice.  If necessary, Class Counsel may use telephone numbers or email addresses to confirm that Settlement Class Members have received the Notice and to inquire whether they have any questions regarding the Settlement.

The Parties agree that the dissemination of the Settlement Notice by First Class Mail in the manner specified in this Section IV satisfies the notice requirements of due process and Pennsylvania law. Plaintiffs will request the Court to approve, in the Preliminary Approval Order, the direct mailing of the Settlement Notice, Claim Form, and Form W-9 as set forth in this Section IV.

## V.   COSTS OF NOTICE AND CLAIMS ADMINISTRATION

The Parties agree that all costs of preparing and disseminating the Settlement Notices

provided for in this Agreement, and all costs of performing the Payment Calculations, shall be paid by Class Counsel, but that Class Counsel shall seek no additional award of fees or costs from the Class Settlement Fund related to these costs.

All other fees and expenses incurred in administering this Agreement, including payments made for the services of the Settlement Administrator for the duties set forth in Section III.E above, shall be paid from the Class Settlement Fund. Unless otherwise specifically agreed in writing, FXG shall not be responsible for any cost that may be incurred by, on behalf of, or at the direction of Plaintiffs or Class Counsel in (a) defending the Agreement or the Settlement against any challenge to them, (b) defending against any challenge to any order or judgment entered pursuant to the Agreement, or (c) for any other reason.

## VI.    PROCEDURES FOR SETTLEMENT APPROVAL

### A.    Preliminary Approval

Plaintiff shall, as soon as practicable following the execution of this Agreement by all Parties, move the Court to enter the Preliminary Approval Order. The proposed deadlines to be established in the Preliminary Approval Order are as follows, unless otherwise ordered by the Court:

1.    10 days after entry of the Preliminary Approval Order: Defendant shall provide to Class Counsel the name, last known address, and sufficient information to identify each Settlement Class Member in the data previously provided by FXG for purposes of mediation ("Settlement Class Member Information").

2.    20 days after entry of the Preliminary Approval Order: Date on or before which Class Counsel shall distribute the Settlement Notice, Claim Form, and Form W-9 to Settlement Class Members via First Class Mail.

3.    30 days after the initial mailing of the Settlement Notice, Claim Form, and Form W-9:  Lichten & Lis-Riordan, P.C. shall distribute a "reminder notice" to all Settlement Class Members who have not yet submitted a Claim Form and Form W-9 or otherwise responded to the Settlement Notice.  In Class Counsel's discretion, Class Counsel may, thirty days after Notice is mailed, make follow-up telephone calls to Settlement Class Members who have not responded to the Settlement Notice.  The purpose of these telephone calls will be solely to confirm that the Settlement Class Member received the Notice and to offer to answer any questions of the Class Member.

4.    14 days after the opt-in deadline for the NYAG Settlement:  Date upon which FXG shall provide to Class Counsel a list of all those Class Members who were Deductions Beneficiaries in the NYAG Settlement and who had not yet submitted an opt-inform to participate in that case.

5.    10 days after receipt of list of NYAG non-participants: Date upon which Class Counsel will mail Deductions Beneficiaries Notice to those Class Members who were Deductions Beneficiaries in the NYAG Settlement and who had not yet submitted a claim form to participate in that case.

6.      90 days after mailing of the Settlement Notices: Date on or before which Settlement Class Members must submit Exclusion Requests; Date on or before which objections to the Settlement, the Agreement, or the amount of fees that Class Counsel has requested, must be submitted (consistent with the instructions in the Settlement Notice); Date on or before which Settlement Class Members must submit completed Claim Forms and Form W-9's in order to participate in the Settlement and receive a share of the Settlement Payment, except that late claims may be accepted based on a showing of excusable neglect, and only in the event that the late claim will not delay distribution of the Class Settlement Fund under the terms of this Agreement.

7.      The Parties will coordinate with the Court to set a date for the Fairness Hearing that is no sooner than 100 days after the Court enters a Preliminary Approval Order or October 1, 2019, whichever is later.

## B.    Final Approval

At least seven (7) calendar days prior to the Fairness Hearing scheduled by the Court, or on such other date as the Court may require, Class Counsel will file with the Court an unopposed motion, in a form agreeable to Counsel for FXG, seeking entry of an order granting Final Approval of the Settlement.

At the Fairness Hearing, Plaintiff shall request the Court to enter the Final Approval Order, substantially in the form of **Exhibit 5** to this Agreement.

## VII.    CLASS COUNSEL'S ATTORNEYS' FEES AND COSTS, AND SERVICE AWARDS TO NAMED PLAINTIFFS

A.      FXG shall not oppose Class Counsel's request for attorneys' fees and costs of up to 30% of the Class Settlement Fund covering all legal services provided by Class Counsel in the past and future to the members of the Settlement Class in connection with the Lawsuit, the settlement of the Lawsuit, any appeal in connection with the Settlement, implementation of the Settlement, or otherwise.

B.      FXG shall not oppose Class Counsel's request for an incentive award to Named Plaintiffs for up to $15,000 each above what each is otherwise eligible to receive under Section III of this Agreement. The incentive award shall be paid from the common Class Settlement Fund.

C.      The agreed amounts set forth above in this Section will be subject to Court approval, which approval shall be stated in the Final Approval Order of the Court.

D.      Upon occurrence of the Effective Date, the Settlement Administrator shall, as soon as thereafter reasonably practicable, but within no more than 20 additional business days, mail, by first-class United States Mail, to Named Plaintiffs and Class Counsel checks drawn on the account of the Class Settlement Fund in the amounts specified above, as approved by the Court. Class Counsel shall provide to the Settlement Administrator in a timely manner all information needed with respect to the issuance of the checks for attorney's fees and Service Awards, including Form

W-9's. The Settlement Administrator shall have no obligation to make payments under this Section until such information is received.

E.     Upon transferring the Settlement Payment to the Class Settlement Fund created for this Lawsuit, FXG will have no further responsibility or liability for any amount of attorneys' fees or costs for work performed or expenses incurred in connection with the Lawsuit to any of the Class Counsel or to any other counsel for Plaintiffs or any Class Member. In the event any claim for attorneys' fees or costs in connection with the Lawsuit is made by any counsel other than Class Counsel, the parties agree that FXG has no obligation of any kind to satisfy any such claim. In the event of any claim for attorneys' fees or costs brought against FXG in connection with the Lawsuit, Class Counsel agree to indemnify FXG against any payment on claims for fees or costs made by other counsel for work performed in connection with the Lawsuit. Class Counsel represent that there are no liens related to any fees associated with the claims of the Class Members as of the execution date of this Agreement. Any attorneys' fees or costs dispute between Class Counsel and any other attorney(s) will not interfere with the Settlement, the provisions of this Settlement Agreement, the dismissal of the Lawsuit, or the releases obtained pursuant to the Settlement Agreement. FXG is hereby released from potential liability for statutory attorneys' fees upon transferring the Settlement Payment to the Class Settlement Fund.

## VIII.   RELEASE

All Settlement Class Members who do not submit a valid Exclusion Request will be bound by the release of all Settlement Class Member Released Claims, regardless of whether they submit a Claim Form.

Any Settlement Class Members who submit a valid Exclusion Request shall not release any claims under this Agreement.

By executing this Agreement, Plaintiffs, on behalf of themselves and all Settlement Class Members who do not submit a valid Exclusion Request (including their affiliated business entities, if any), acknowledge that, upon entry of the Final Approval Order by the Court, the Lawsuit shall be dismissed with prejudice, an order of dismissal with prejudice shall be entered, and all Released Claims, including Settlement Class Member Released Claims and Named Plaintiff Released Claims (as defined herein), shall thereby be conclusively settled, compromised, satisfied, and released as to the Releasees.

In connection with such release of claims, Named Plaintiffs and the Class Members hereby acknowledge that they are aware that they or their attorneys may hereafter discover claims or facts in addition to or different from those which they now know or believe to exist with respect to the Released Claims, but that it is their intention to hereby fully, finally, and forever settle and release all of the Released Claims, known or unknown, suspected or unsuspected, that they may have against Releasees. In furtherance of such intention, the release herein given to the Releasees by the Named Plaintiff and Class Members shall be and remain in effect as a full and complete release of all Released Claims.

Notwithstanding the above, the Court shall retain jurisdiction over the Parties, the Settlement Class Members and the Settlement with respect to the future performance of the terms

of this Settlement Agreement, and to assure that all payments and other actions required by the Settlement are properly carried out.

## IX.    COVENANT NOT TO SUE

Plaintiffs, on behalf of themselves, the Settlement Class Members who do not submit a valid Exclusion Request, and their affiliated business entities (if any), (a) covenant and agree that neither Plaintiffs nor any of the Settlement Class Members, nor any of Plaintiffs' or Class Members' affiliated business entities (if any), nor anyone authorized to act on behalf of any of them, will commence, authorize, or accept any benefit from any judicial or administrative action or proceeding, other than as expressly provided for in this Settlement, against Releasees, or any of them, in either their personal or corporate capacity, with respect to any claim, matter, or issue that in any way arises from, is based on, or relates to any alleged loss, harm, or damages allegedly caused by Releasees, or any of them, in connection with the Released Claims; (b) waive and disclaim any right to any form of recovery, compensation, or other remedy in any such action or proceeding brought by or on behalf of any of them; and (c) agree that this Settlement shall be a complete bar to any such action.

## X.    REPRESENTATIONS AND WARRANTIES

Each of the Parties represents and warrants to, and agrees with, each of the other Parties as follows:

A.    Plaintiffs' and Class Counsel, FXG's in-house counsel, and FXG's undersigned outside counsel agree that they will not issue or cause to be issued any press release directed to any media representative regarding the Lawsuit or the Settlement (except as required to effectuate notice under this Agreement or as required by law).

B.    Each of the Parties has had the opportunity to receive, and has received, independent legal advice from his or its attorneys regarding the advisability of making the Settlement, the advisability of executing this Agreement, and the legal and income-tax consequences of this Settlement, and fully understands and accepts the terms of this Settlement.

C.    Plaintiffs represent and warrant that no portion of any claim, right, demand, action, or cause of action against any of the Releasees that Plaintiffs are releasing in this Agreement, and no portion of any payment to which Plaintiffs may be entitled, has been assigned, transferred, or conveyed by or for Plaintiffs in any manner; and no person other than the Plaintiffs and the Settlement Class Members have any legal or equitable interest in the claims, demands, actions, or causes of action to be released in this Agreement.

D.    Any other person or entity (including, but not limited to, insurers, lien holders, business partners, related or associated business entities, or other creditors) that has any judgments, liens, subrogation interests, or related claims which arise out of the Released Claims or the damages alleged by the Plaintiffs and the Settlement Class as a result of the Released Claims must be satisfied from the payments to Claiming Class Members as detailed in Section III herein. Plaintiffs and Claiming Class Members agree that they are liable for, and will release, hold harmless, defend, and indemnify the

Releasees from and against any and all Released Claims, known or unknown, that may be brought by any person, firm, corporation, or other entity, including any lien holders, against the Releasees for any such judgments, liens, interests, or claims that exist arising out of the Released Claims.

E.      None of the Parties relies or has relied on any statement, representation, omission, inducement, or promise of any other party (or any officer, agent, employee, representative, or attorney for any other party) in executing this Agreement, or in making the Settlement provided for herein, except as expressly stated in this Agreement.

F.      Each of the Parties has investigated the facts pertaining to the Settlement and this Agreement, and all matters pertaining thereto, to the full extent deemed necessary by that party and his or its attorneys.

G.      Each of the Parties has carefully read, and knows and understands, the full contents of this Agreement and is voluntarily entering into this Agreement after having had the opportunity to consult with, and having in fact consulted with, his or its attorneys.

H.      Section titles or captions contained herein are inserted as a matter of convenience and for reference, and in no way define, limit, extend or describe the scope of this Settlement or any provision hereof.

I.      Each of the Parties has participated in the drafting of all provisions of this Agreement, has had an adequate opportunity to read, review, and consider the effect of the language of this Agreement, and has agreed to its terms.

J.      It is understood and agreed that this Agreement is for the compromise of disputed claims and is not to be construed as or deemed to be an admission of any liability, fault, or responsibility on the part of FXG or any other Releasee.

K.      It is understood and agreed that the terms and conditions of this Agreement are the result of lengthy, intensive, arm's-length negotiations between the Parties and that this Agreement shall not be construed in favor of or against any party by reason of the extent to which any party or his or its counsel participated in the drafting of this Agreement.

L.      This Agreement constitutes and comprises the entire agreement among the Parties with respect to the subject matter hereof. It supersedes all prior and contemporaneous oral and written agreements and discussions. It may be amended only by an agreement in writing, signed by all Parties hereto.

M.      The Parties agree that any dispute regarding the interpretation or enforcement of the terms of this Settlement or in connection with this Agreement shall be resolved by the Court.

## XI.   PRELIMINARY TIMELINE FOR COMPLETION OF SETTLEMENT

The preliminary schedule for notice, approval, and payment procedures carrying out this settlement is as follows. The schedule may be modified depending on whether and when the

Court grants necessary approvals and orders notice to the class, sets further hearings, or otherwise orders modifications to this schedule. In the event of such modification, the Parties shall cooperate in order to complete the settlement procedures as expeditiously as reasonably practicable. To the extent this Section XI conflicts with one or more other provisions of this Agreement, the other provision(s) shall supersede this Section XI.

| TIME REQUIRED | EVENT |
|---|---|
| Within 20 Days of entry of Preliminary Approval Order | Mailing of Settlement Notices, Claim Forms, and Form W-9's. |
| 30 days after mailing of Initial Notice | Class Counsel to conduct trace/search efforts, send a follow up mailing to individuals whose Notice Packet was returned as undeliverable or whose listed address is found to be inaccurate; and send the reminder mailing |
| 14 days after the opt-in deadline for the NYAG Settlement | FXG shall provide to Class Counsel a list of all those Class Members who were Deductions Beneficiaries in the NYAG Settlement and who had not yet submitted an opt-inform to participate in that case. |
| 10 days after receipt of list of NYAG non-participants | Date upon which Class Counsel will mail Deductions Beneficiaries Notice to those Class Members who were Deductions Beneficiaries in the NYAG Settlement and who had not yet submitted a claim form to participate in that case. |
| 90 days after mailing of Notice | Last day for Settlement Class Members to submit written objections, Exclusion Requests, and Claim Forms |
| At least seven days prior to Fairness Hearing (or at another time established by the Court) | Plaintiff files Motion for Final Approval |
| To be determined by the Court, but no less than 90 days after entry of the Preliminary Approval Order | Fairness Hearing |

| | |
|---|---|
| Within 30 days of entry of Final Approval Order | Class Counsel to provide Settlement Administrator final calculation of payments from the Settlement Fund to be distributed to the Claiming Class Members |
| Within 15 Business Days of Settlement Effective Date | Defendant to transfer Settlement Payment to the Class Settlement Fund. |
| Within 20 business days of Settlement Effective Date | Settlement Administrator to distribute and pay all court-approved attorneys' fees and litigation costs |
| Within 20 business days of Settlement Effective Date | Settlement Administrator to distribute and pay: (1) Claiming Class Member Payments; (2) administration costs to Settlement Administrator; (3) class representatives' service awards (First Round Distribution). |
| 90 days after payment of settlement checks | Expiration of first round distribution of class member settlement checks. |
| Within 10 days of date of expiration of class member settlement checks. | Settlement Administrator to make the final calculation of payments to be distributed to the eligible class members of remainder of the Net Settlement Fund and provide all Counsel with a report listing the amount of all payments to be made to each Eligible Settlement Class Member, and amounts, if any, to be paid to unidentified class members who submit claims for settlement shares from the reserve fund. |

| Within 20 days of date of expiration of class member settlement checks | Settlement Administrator to distribute and pay funds remaining in the Net Settlement Fund and Reserve Fund to eligible identified and unidentified class members (Second Round Distribution). |
| --- | --- |
| 90 days after payment of second round distribution of settlement checks | Expiration of second round distribution of class member checks; Settlement Administrator to pay any residual funds to *cy pres* beneficiaries and close the settlement fund. |
| | |

## XII.   MISCELLANEOUS

### A.   Conditional Nature of Agreement

At the Plaintiffs' option, expressed in written notice to FXG's counsel, this Agreement shall become null and void, and no obligation on the part of any of the Parties will accrue, if the Court materially alters any of the terms of this Agreement to the detriment of Plaintiff or the Settlement Class, or fails to enter the Preliminary Approval Order or Final Approval Order in the Lawsuit in substantially the form submitted by the Parties, except that a court ruling regarding Class Counsel's attorneys' fees and costs or the proposed Service Awards shall not be a basis for withdrawal.

At FXG's option, expressed in written notice to Class Counsel, this Agreement shall become null and void, and no obligation on the part of any of the Parties will accrue, if the Court materially alters any of the terms of this Agreement to the detriment of FXG, or fails to enter the Preliminary Approval Order or Final Approval Order in the Lawsuit in substantially the form submitted by the Parties. Any appeal by Class Counsel of the attorneys' fees and costs awarded by the Court in connection with this Settlement shall not be a basis for any party to have this Agreement become null and void.

FXG shall also have the option, which must be expressed in written notice to Class Counsel, to nullify the Agreement, with no obligation on the part of any of the Parties to accrue, if

either (i) 10% or more of the Settlement Class Members opt out or otherwise exclude themselves from the Settlement Class pursuant to Sections IV and VIII of this Agreement, or if (ii) any number of Settlement Class Members opt out or otherwise exclude themselves from the Settlement Class whose collective proportional shares of the maximum Settlement Payment equal or exceed 10% of that maximum Settlement Payment.

If this Agreement becomes null and void, the Parties shall move forward with the Lawsuit as though no settlement had been reached, all of the Parties to the Lawsuit being placed in the same position they were before this Settlement was proposed, negotiated and agreed upon, and Plaintiffs' motions for approval of this Settlement and for certification of the Settlement Class shall be withdrawn.

### B.  Severability

None of the terms of this Agreement is severable from the others. However, if the Court should rule that any term is void, illegal, or unenforceable for any reason, FXG, in its sole discretion, and Plaintiffs, in their sole discretion (but acting in accord with their duties and obligations to the Settlement Class), may elect to waive any such deficiency and proceed with the Settlement under the terms and conditions ultimately approved by the Court.

### C.  Effectiveness, Amendments, and Binding Nature

This Agreement may be amended only by written agreement signed by the Parties. Except as otherwise stated above, each of the parties, including Plaintiffs on behalf of themselves and the Settlement Classes, expressly accepts and assumes the risk that, if facts or laws pertinent to matters covered by this Agreement are hereafter found to be other than as now believed or assumed by that party to be true or applicable, this Agreement shall nevertheless remain effective.

This Agreement is binding on, and shall inure to the benefit of, the Parties in the Lawsuit and the Settlement Class Members and their respective agents, employees, representatives, officers, directors, parents, subsidiaries, assigns, executors, administrators, insurers, and successors in interest. All Releasees other than FXG, which is a party, are intended to be third-party beneficiaries of this Agreement.

### D.  Cooperation in Implementation

FXG, Plaintiffs, and their respective counsel (including Class Counsel) agree to prepare and execute any additional documents that may reasonably be necessary to effectuate the terms of this Agreement.

### E.  Governing Law

This Agreement shall be construed and governed in accordance with the procedural and substantive law of the state of Pennsylvania, except that all matters of federal law and the Class Settlement Fund's compliance with Internal Revenue Code § 468B and the Treasury Regulations thereunder shall be governed by federal income tax law.

### F.      No Admission of Liability

The Parties are entering into this Settlement for the purpose of compromising and settling disputed claims. Nothing in this Agreement or in the documents relating to the Settlement shall be construed, deemed, or offered as an admission by any of the Parties, or by any member of the Settlement Classes, for any purpose in any judicial or administrative action or proceeding, whether in law or in equity, and regardless of whether this Agreement ultimately becomes effective.

### G.      Income Tax Obligations

The Settlement Payment is allocated by the Parties to compensate for the reimbursement of expenses (whether deducted from contractual payments to Plaintiffs or paid separately by Plaintiffs) and interest. No representation has been made to the Plaintiffs, Class Members, or their attorneys by FXG regarding the taxability of any portion of the payments under this Agreement. Plaintiffs, Class Members, and Class Counsel are solely responsible for their own tax filing and payment obligations arising from this Agreement, except that the Settlement Administrator will provide Plaintiff, Class Members, and Class Counsel with copies of IRS Forms 1099 for any payments the Class Settlement Fund makes to them under this Agreement. If any taxing authority imposes employment taxes because any portion of the Settlement Payment is determined to be taxable wages, the Settlement Administrator shall be responsible for the employer share of such taxes. However, as between the Parties, FXG agrees that it is responsible for the employer share of such taxes rather than Plaintiffs or Class Members. Nothing in this paragraph is intended to alter the duties of the Settlement Administrator set forth in this Agreement.

### H.      Signatures

This Agreement may be executed in counterparts, and, when so executed, shall constitute a binding original. A signature, or copy of a signature, transmitted electronically, including by facsimile or email, shall serve as an original for all purposes.

Plaintiffs:                                              Defendant:


_____          _____
                                                              By:
                                                              FedEx Ground Package System, Inc.
Date:  _____          Its:

                                                              Date:  _____


APPROVED AND ACKNOWLEDGED:          APPROVED AND ACKNOWLEDGED:

_____                    _____

Class Counsel                                        Counsel for FedEx Ground Package System, Inc.